MASON CITY AND FORT DODGE RAILROAD COM-
PANY *v.* BOYNTON.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE
EIGHTH CIRCUIT.

No. 170. Argued January 22, 23, 1907.—Decided February 25, 1907.

In condemnation proceedings the words plaintiff and defendant can only
be used in an uncommon and liberal sense, and although a state statute
may describe the landowner and the condemning corporation as plain-
tiff and defendant respectively, and the state court may hold them to be
such, this court is not bound by that construction in construing the act
of Congress regarding removal of causes and may determine the relation
of the parties and who is entitled to remove the suit.

A condemnation proceeding is a suit even though the condemning corpora-
tion may be free to decline to take the property after the valuation, it
being charged with costs in case it elects not to take.

Under the Iowa statute, in a condemnation proceeding, the landowner is
the defendant within the meaning of the act of Congress regarding re-
moval of causes, and may remove the proceeding to the proper United
States Circuit Court, notwithstanding the state statute provides that he
is the plaintiff in such proceedings.

THIS case comes here on the following certificate:

"The United States Circuit Court of Appeals for the Eighth
Circuit, sitting at the City of St. Louis, Missouri, on the eighth
day of December, A. D. 1905, certifies that the record on file
in the above entitled cause, which is pending in such court
upon a writ of error duly issued to review a judgment rendered
in such cause in favor of the defendant in error in the Circuit
Court of the United States for the Southern District of Iowa,
discloses the following:

"The Code of Iowa, 1897, in a chapter relating to the taking
of private property for works of internal improvement, in-
cluding the construction and repair of railways, contains the
following:

"'SEC. 1999. If the owner of any real estate necessary to be taken for either of the purposes mentioned in this chapter refuses to grant the right of way or other necessary interest in said real estate required for such purposes, or if the owner and the corporation cannot agree upon the compensation to be paid for the same, the sheriff of. the county in which such real estate may be situated shall, upon written application of either party, appoint six freeholders of said county not interested in the same or a like question, who shall inspect said real estate, and assess the damages which said owner will sustain by the appropriation of his land for the use of said corporation, and make report in writing to the sheriff of said county; and, if the corporation shall, at any time before it enters upon said real estate for the purpose of constructing said railway, pay to the sheriff, for the use of the owner, the sum so assessed and returned to him as aforesaid, it may construct and maintain its railway over and across such premises.'

"'SEC. 2009. Either party may appeal from such assessment to the District Court within thirty days after the assessment is made, by giving the adverse party, or, if such party is the corporation, its agent or attorney, and the sheriff notice in writing that such appeal has been taken. The sheriff shall thereupon file a certified copy of so much of the appraisement as applies to the part appealed from, and said court shall try the same as in an action by ordinary proceedings. The land owner shall be plaintiff and the corporation defendant.

"'SEC. 2010. An appeal shall not delay the prosecution of work upon said railway, if said corporation pays or deposits with the sheriff the amount assessed. The sheriff shall not pay such deposit over to the person entitled thereto after the service of notice of appeal, but shall retain the same until the determination thereof. . . .

"'SEC. 2011. On the trial of the appeal no judgment shall be rendered except for costs. The amount of damages shall be ascertained and entered of record, and if no money has

been paid or deposited with the sheriff the corporation shall pay the amount so ascertained, or deposit the same with the sheriff before entering upon the premises. Should the corporation decline to take the property and pay the damages awarded on final determination of the appeal, then it shall pay, in addition to the costs and damages actually suffered by the land owner, a reasonable attorney's fee, to be taxed by the court.

"' SEC. 2012. If, on the trial of 'the appeal, the damages awarded by the commissioners are increased, the corporation shall pay or deposit with the sheriff the whole amount of damages awarded before entering on or using or controlling the premises. The sheriff, upon being furnished with a certified copy of the assessment, may remove said corporation, and all persons acting for or under it, from said premises, unless the amount of the assessment is forthwith paid or deposited with him.

"'SEC. 2013. If the amount awarded by the commissioners is decreased on the trial of the appeal, the reduced amount only shall be paid the landowners.'

"Section 3497 of the Code of Iowa, 1897, also provides:

"'An action may be brought against any railroad corporation, . . . in any county through which such road or line passes or is operated.'

"The Mason City and Fort Dodge Railroad Company, plaintiff in error, hereinafter called railroad company, was a railroad corporation organized and existing under the laws of the State of Iowa, and as such entitled to avail itself of the provisions of the foregoing statutes of Iowa. C. D. Boynton, defendant in error, hereinafter called the owner, was the owner of certain lots of ground in the Town of Carroll, Carroll County, in the State of Iowa, and was at all times mentioned herein a citizen of the State of Missouri. Prior to February 18, 1902, the railroad company, requiring Boynton's lots as a right of way for the construction of its railroad, filed an application in the office of the sheriff of Carroll County, asking

for the appointment of six freeholders to inspect the lots and assess the damages which the owner would sustain by the appropriation of his lots for the use of the railroad company. On February 18, 1902, the commissioners were duly appointed by the sheriff and made their report, assessing the owner's damages occasioned by the appropriation of his lots by the railroad company at $4,750.00.

"On the same day the railroad company paid the sheriff that amount of money for the use of the owner.

"Afterwards, and within the time fixed by the state statute, the owner appealed from the commissioners' award to the District Court of Carroll County. In due time, the owner filed in the last mentioned court a petition for the removal of the cause into the Circuit Court of the United States for the Western Division of the Southern District of Iowa, on the ground of diversity in citizenship. In his petition and bond to secure such removal the owner referred to and treated himself as the defendant, and referred to and treated the railroad company as the plaintiff, in the case.

"In due course the cause came on for hearing in the Circuit Court, when the parties, by a written stipulation filed with the clerk, waived a jury and agreed to try the case to the court. Both parties introduced evidence and fully submitted themselves to the jurisdiction of the court (if they could do so). The trial resulted in an assessment of the owner's damages at $11,445, and in a judgment against the railroad company for costs, including a fee of $300 for the owner's attorneys. In due time the railroad company regularly sued out a writ of error to the end that the record and proceedings in the Circuit Court might be reviewed by this court. The assignment of errors which accompanied the petition for the writ of error alleged that the Circuit Court erred in ascertaining and fixing the amount of damages to be paid by the railroad company for its appropriation of the owner's lots, in that there was an entire absence of evidence to support the award and finding. At no time during the pendency of the pro-

ceedings in the Circuit Court did the railroad company question the jurisdiction of that court or the right of the owner to remove the cause into that court, but both parties participated in the trial up to a final judgment, and in the proceeding to secure a writ of error, as if there was no question of jurisdiction in the case. Not until the railroad company filed its brief in this court was the jurisdiction of the Circuit Court in any manner challenged. But in its brief, as also in the oral argument made in its behalf, the chief point relied upon by the railroad company to secure a reversal of the finding and judgment of the Circuit Court, is that the owner was the plaintiff in said cause and proceeding, and did not have the right to remove the same into the Circuit Court and that therefore that court could not entertain jurisdiction thereof.

"And the Circuit Court of Appeals for the Eighth Circuit further certifies that the following questions of law are presented in this cause, that their decision is indispensable to a decision of the cause, and that to the end that such court may properly decide the issues of law so presented it desires the instruction of the Supreme Court of the United States upon such questions, to wit:

"1. Was the land owner a defendant within the meaning of the removal statute, when the suit was removed into the Circuit Court?

"2. If the land owner was not a defendant, within the meaning of the removing statute, could the Circuit Court take cognizance of the suit through a removal by him? Stated in other words, the question is this: Is the provision of the removal statute, to the effect that the removal, on the ground of diverse citizenship, may be 'by the defendant or defendants therein, being non-residents of that State,' restrictive and jurisdictional in the sense that cognizance of the suit can be taken by the Circuit Court through a removal only when it is by the defendant, or is the provision only modal and formal in the sense that non-compliance therewith, or non-conformity thereto, may be waived?

"3. Is the judicial proceeding which the land owner is authorized by the statutes of Iowa to initiate in the District Court of the State, by way of a so-called appeal from the assessment of the commissioners selected by the sheriff, a suit which can be originally instituted in the Circuit Court of the United States, when the citizenship of the parties and the sum or value of the matter in dispute are such as to make the suit otherwise cognizable in that court?

"4. If the Circuit Court could not have taken cognizance of the suit through the removal by the land owner, and if the Circuit Court could have taken cognizance of the suit through its original institution in that court after the assessment by the commissioners, did the parties by appearing in the Circuit Court and there litigating to a final conclusion the matter in dispute, without any objection to the jurisdiction of the court or to the manner in which its jurisdiction was invoked, authorize the Circuit Court to exercise jurisdiction and to proceed to final judgment in like manner and with like effect as if the suit had been originally instituted in that court, the citizenship of the parties and the sum or value of the matter in dispute being such as to make the suit otherwise cognizable in that court?".

*Mr. Thomas D. Healy,* with whom *Mr. A. G. Briggs, Mr. John L. Erdall, Mr. M. F. Healy* and *Mr. Robert Healy* were on the brief, for Mason City and Fort Dodge Railroad Company:

The landowner was plaintiff within the meaning of the removal statute, when the suit was removed into the Circuit Court.

The corporation seeking to condemn real estate is in fact the defendant, and occupies a position analogous to that of a defendant in a case brought to recover the value of real estate which has been appropriated. This is the case where there is nothing left to contest but the value of the real estate taken.

When the case was transferred to the District Court by appealing from the award of the commissioners, it took, under the statutes of the State, the form of a suit at law, and was thenceforth subject to its ordinary rules and incidents. No other question was open to contest in the state District Court. *Turner* v. *Holeran,* 11 Minnesota, 253; *Mississippi Boom Company* v. *Patterson,* 98 U. S. 403; *Meyers* v. *C. & N. W.,* 118 Iowa, 312; §§ 1999, 2009, 2010, 2011 of the Code (1897) of Iowa.

*Mr. Benjamin I. Salinger,* for Boynton:

Within the meaning of the removal act, this land-owner was not a plaintiff, and no case holds that he is except *Myers* v. *Railway,* 118 Iowa, 312, and *Kirby* v. *Railway,* 106 Fed. Rep. 552.

The non-resident landowner may remove before he appeals to the state court from award made. *Railway* v. *Day,* 54 Fed. Rep. 545; *Traction Co.* v. *Mining Co.,* 196 U. S. 249.

While state laws, and decisions by state courts of last resort, may, as to litigants who remain in the courts of the State, settle, arbitrarily, who is plaintiff, neither a legislature nor such courts may, directly or indirectly, abridge the right to remove to the Federal court in a case of which that court has original, concurrent jurisdiction. *Hess* v. *Reynolds,* 113 U. S. 73; *Myers* v. *Railway,* 118 Iowa, 312, 321; *Terminal Co.* v. *Ry.,* 119 Fed. Rep. 209; *Searle* v. *District,* 124 U. S. 197; *Traction Co.* v. *Mining Co.,* 196 U. S. 249; *Reagan* v. *Loan Co.,* 154 U. S. 391.

What is removable in one State must be so in every other; and a State may not vary the standard of removability by making proceedings which affect the property rights of a non-resident unlike what suits usually are. Cases *supra.*

While the Federal courts will, in such cases as plaintiff in error cites, follow the decisions of the highest state courts, even where the soundness of such decisions is not approved, this rule does not apply to state decisions that directly or

indirectly tend to abridge the jurisdiction of the Federal courts. Cases *supra*.

While it has been settled that certain instances of seeking to increase an award are equivalent to beginning suit to obtain pay for land appropriated, this does not necessarily settle that every non-resident landowner who appeals from a condemnation award is a plaintiff within the meaning of the removal act, and the cases that so defined the beginning of suit did not, and had no occasion to, hold that such owner was such plaintiff.

If it may be claimed that some of the cases so defining the beginning of suit do hold that the appealing landowner was a plaintiff, they do so on the theory that his appeal could not and did not present anything but the question of compensation.

Under the statutes of Iowa such appeal could also present whether conditions existed which, under such statutes warranted condemnation proceedings. *Terminal Co.* v. *Railway Co.*, 19 Fed. Rep. 209.

Under those statutes the condemnation at bar was sufficiently a judicial proceeding to make the one who instituted it, rather than the owner who appealed from the award, the plaintiff. *Traction Co.* v. *Mining Co.*, 196 U. S. 241; *Boom Co.* v. *Patterson*, 98 U. S. 404; *Searle* v. *District*, 124 U. S. 199, 200.

Had the Iowa statutes done less than to make the proceedings on condemnation sufficiently judicial to allow a hearing on whether the right to condemn existed, and confined them to the mere right to have compensation ascertained, there would have been a denial of due process of law. *Traction Co.* v. *Mining Co.*, 196 U. S. 251, 252.

While consent cannot give jurisdiction, if one party assert the facts necessary to jurisdiction and they are not put in issue, and if a court competent to try the question whether jurisdiction exists, decides that it does, it is an adjudication that jurisdiction exists.

While judicial decisions can not create jurisdiction in the tribunal that decides what jurisdiction a court, competent to try the question of fact or law involved, can, by deciding that another court has jurisdiction, preclude inquiry into said jurisdiction unless the decision is directly attacked. *Railway Co.* v. *Daughtry*, 138 U. S. 298; *Cable* v. *Ry.*, 88 Fed. Rep. 803; *Connell* v. *Smiley*, 156 U. S. 335; *Davies* v. *Lathrop*, 13 Fed. Rep. 565; *Railway* v. *Ramsey*, 22 Wall. 322; *Sims* v. *Hundley*, 6 How. 1; *De Sobrey* v. *Nicholson*, 3 Wall. 420; *Goodnow* v. *Burrows*, 74 Iowa, 266; *Kirby* v. *Railway Co.*, 106 Fed. Rep. 552.

While the order of the state court granting a removal will not avail against conflicting action on part of the Federal courts, if such order is neither appealed from nor nullified by the court to which the removal is taken, such order of the state court, as against collateral attack, establishes conclusively that there was jurisdiction to remove. *Telegraph Co.* v. *Griffith* (Ga.), 30 S. E. Rep. 420; Dillon's Rem. of Causes (5th ed.), 174; Black, Dillon Rem. par. 191; *Removal Cases*, 100 U. S. 474; *Stone* v. *South Carolina*, 117 U. S. 430; *Bank* v. *Dodge*, 42 N. J. L. 316; *Walker* v. *O'Neil*, 38 Fed. Rep. 374; *Goodnow* v. *Burrows*, 74 Iowa, 266.

MR. JUSTICE HOLMES, after making the foregoing statement, delivered the opinion of the court.

In *Madisonville Traction Co.* v. *Saint Bernard Mining Co.*, 196 U. S. 239, it was decided that proceedings of this character could be removed to the United States Circuit Court. The question to be decided now is only whether the removal in this case can be upset on the ground that it was asked by the wrong party. The railroad company relies upon the words of the Iowa Code, § 2009, quoted above, and upon a decision of the Supreme Court of the State in a case like the present, except that the railroad was a foreign company, in which it was held that the railroad had a right to remove. *Myers* v. *Chicago & Northwestern Ry. Co.*, 118 Iowa, 312, 324. See

also *Kirby* v. *Chicago & Northwestern Ry. Co.*, 106 Fed. Rep. 551. It is said that this court is bound by the construction given to the state law by the state court. Indeed the above § 2009 does not need construction; it enacts, in terms, that the landowner shall be plaintiff. As the right to remove a suit is given only to the defendants therein, being non-residents of the State, it is argued that the state decision ends the case.

But this court must construe the Act of Congress regarding removal. And it is obvious that the word defendant as there used is directed toward more important matters than the burden of proof or the right to open and close. It is quite conceivable that a state enactment might reverse the names which for the purposes of removal this court might think the proper ones to be applied. In condemnation proceedings the words plaintiff and defendant can be used only in an uncommon and liberal sense. The plaintiff complains of nothing. The defendant denies no past or threatened wrong. Both parties are actors: one to acquire title, the other to get as large pay as he can. It is not necessary in order to decide that the present removal was right to say that the state decision was wrong. We leave the latter question where we find it. But we are of opinion that the removal in this case was right for reasons which it will not take long to state.

It is said the proceedings only become a case, within the meaning of the Act of Congress, after the preliminary assessment and the appeal, and that then the landowner is in the position of one demanding pay for property which he has lost. If we take a general view of the Iowa statutes, this conclusion is not correct. The railroad might have taken the appeal. If it had, the landowner would have been on the defensive in endeavoring at least to uphold the assessment, but he would have been called the plaintiff none the less. Whichever party appeals, it is not true that the landowner is seeking pay for what he has lost. By § 2011 the railroad is free to decline to take the property if it thinks the price too large. Even if, as in this case, it deposits the amount

first assessed with the sheriff, the latter is not to pay it over until the determination of the appeal. Sec. 2010. We see no reason to suppose that the deposit impairs the railroad's right to withdraw, although the Supreme Court of Iowa says, *ubi supra,* that by payment and entry the railroad appropriates the land. See § 2013. Probably, too, the position of the parties under the Act of Congress should be determined upon general considerations without regard to what has happened. Looked at as a whole, the Iowa statutes provide a process by which railroads and others may acquire land for their purposes which the owner refuses to sell. The first step is the valuation. Whether it is part of the case or not, it is a necessary condition to the proceedings in court. Against the will of the owner the title to the land is not acquired until the case is decided and the price paid. The intent of the railroad to get the land is the mainspring of the proceedings from beginning to end, and the persistence of that intent is the condition of their effect. The State is too considerate of the rights of its citizens to take from them their land in exchange for a mere right of action. The land is not lost until the owner is paid. Therefore, in a broad sense, the railroad is the plaintiff, as the institution and continuance of the proceedings depend upon its will. *Hudson River Railroad & Terminal Co.* v. *Day,* 54 Fed. Rep. 545.

It is not argued that this is any the less a suit because the railroad is free to decline to take the property. The adjudication fixes the right of the railroad to take the land at the price adjudged, and charges it with costs and attorney's fees taxed by the court, in case it elects not to take. The question is not discussed in *Madisonville Traction Co.* v. *Saint Bernard Mining Co.,* 196 U. S. 239, where, if there had been anything in it, possibly it might have been raised.

As what we have said is sufficient to dispose of the matter of the certificate, we think it unnecessary to consider other arguments, or to answer any question but the first.

*The first question is answered, Yes.*