## KANSAS CITY v. METROPOLITAN WATER CO.

(Circuit Court, D. Kansas, First Division. October 10, 1908.)

1. REMOVAL OF CAUSES (§ 42*) — SUITS REMOVABLE—CONDEMNATION PROCEEDINGS.

A state is without power by the mere form of procedure prescribed to deprive the owner of property sought to be taken by condemnation proceedings from removing such proceedings into a federal court if such owner be a citizen of a foreign state and the value of the property exceeds the jurisdictional amount.

[Ed. Note.—For other cases, see Removal of Causes, Dec. Dig. § 42.*]

2. REMOVAL OF CAUSES (§ 79*) — CONDEMNATION PROCEEDINGS — TIME FOR REMOVAL.

Laws Kan. 1908, p. 30, c. 33, authorizes cities of the first class having a population of over 50,000 to condemn waterworks property. It provides that when authorized by a resolution of the mayor and city council the city may apply to the judge of the district court, who shall appoint commissioners to appraise the property and assess the damages; that an appeal may be taken from such award and tried in the district court, but that on the payment of the amount of the award to the county treasurer by the city it shall become the owner of the property with the right of possession. Held, that a proceeding by a city under such statute is a judicial proceeding from its inception, and that a defendant water company which is a citizen of another state may remove the same into a federal court at any time after the application for the appointment of commissioners, and is not compelled to wait until an award has been made and an appeal taken, when it has been deprived of its property and the only question to be litigated is the amount of compensation to which it is entitled.

[Ed. Note.—For other cases, see Removal of Causes, Dec. Dig. § 79.*

Proceedings under power of eminent domain as civil suits under laws relating to removal of causes to federal courts, see note to South Dakota Ry. Co. v. Chicago, M. & St. P. Ry. Co., 73 C. C. A. 183.]

On Motion to Remand to State Court.

Miller, Buchan & Miller, Samuel Maher, and Willard P. Hall, for complainant.

H. L. Alden, City Counselor, for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

POLLOCK, District Judge. At the 1908 Special Session of the Legislature of this state (Laws 1908, p. 30, c. 33), there was enacted a law conferring upon cities of the first class the power of condemning and taking over the property, or any part thereof, of any water company located in any such city, which act, in so far as material to this inquiry, provides, as follows:

"Section 1. That any city of the first class having a population of over fifty thousand is hereby empowered to acquire by the exercise of the right of eminent domain the whole or any part of any water-supply plant, including all pipes, mains and other appurtenances and rights and property, real or personal, of every kind pertaining thereto, situated either within or without such city or partly within and partly without such city; and it is further empowered to acquire by the exercise of the power of eminent domain any other property owned by any person or corporation, real or personal, necessary to the construction, improvement, extension, enjoyment or maintenance of a water-supply plant or the furnishing of water to such city and its inhabitants, situated either within or without any city.

"Sec. 2. The mayor and council of any city desiring to exercise the power of eminent domain for the purpose hereinbefore mentioned shall by resolution declare it necessary and for the best interests of the city to proceed under the provisions of this act to acquire for said city such property, describing the property condemned and appropriated.

"Sec. 3. Upon the passage of such resolution as is specified in the next preceding section, the city passing the same may apply to the judge of the district court of the county in which said city is located, or to the judge of any court of general jurisdiction having a clerk and seal of the county in which said city is located, for the appointment of three commissioners to make appraisement of the value of the property so condemned and for the assessment of all damages. Said commissioners shall be residents and freeholders of the county in which said city is located. Such appointment shall be made by the judge of the court on the written application of the city by its attorney or legal representative; the appointment shall be made in writing, under the hand of the judge, and delivered to the city applying therefor; the application for the certificate of appointment shall be recorded in the office of the register of deeds of the county in which said city is located. In case any vacancy occurs, or any such commissioner or commissioners refuse to serve on such board, the judge of the court to which application is made shall appoint, in the manner herein provided, some other person or persons having the qualifications herein provided. Such commissioners shall be sworn to honestly and faithfully discharge their duties as such commissioners.

"Sec. 4. Upon their appointment and qualification the said commissioners shall give notice of the time and place of their meeting to value property sought to be acquired by the city and to assess the damages. Such notice shall be addressed 'to whom it may concern,' and given by publication for thirty successive days (excluding Sundays) next preceding the time fixed for said meeting in some daily newspaper published in such city. Said notice shall specify that the purpose of the meeting of the said commissioners is to ascertain and determine the value of property condemned and the damages. At the time fixed by said notice, or at the time to which said meeting may be adjourned, the said commissioners shall proceed to ascertain and determine the value of the property condemned by the city and the damages. They may examine experts and resort to all means within their power to arrive at the value of the property condemned, and the owner or any one interested therein, or who may be affected by the condemnation proceedings, may be heard before said commissioners, and may produce such testimony before them to enable said commissioners to arrive at the fair and equitable value of the property condemned and the damages. The said commissioners may adjourn as often and for such length of time as may be deemed convenient, and may during any adjournment perfect or correct all errors or omissions in the giving of notice by serving new notices or making new publications, citing corporations or individual property owners who have not been notified or to

whom defective or insufficient notice has been given, and notice of any adjourned meeting shall be as effective as notice of the first meeting of the commissioners. Upon the completion of their hearing and deliberations the said commissioners shall make their report in writing, and shall forthwith file the same with the clerk of the county in which the city is located. Said report shall be filed within twenty days from the date of the last meeting of said commissioners."

"An appeal shall be had to the district court of the county in which such city is located by the owner or any person interested or aggrieved, from the determination of the commissioners as to the value of the property appropriated and for all damages sustained by such interested or aggrieved party, in the same manner as appeals are granted from the judgment of a justice of the peace to the district court; and said appeal and all subsequent proceedings shall only affect the amount of compensation to be allowed, and shall not delay the city in taking possession of the property condemned, if said city shall deposit with the treasurer of the county in which said city is located, as herein provided, for the use and benefit of the owners of said property or others interested therein, including parties having liens thereon, the amount of the award allowed. Upon the making of said deposit said city may at once take possession of the property condemned and manage and control the same as hereinafter specified. Said city shall, in addition to the amount awarded by the commissioners, be liable for such sums in excess thereof as may be recovered on any appeal, and for the costs of said appeal, but if judgment for a less sum than awarded by the commissioners is recovered, the city shall not be liable for a sum in excess of such judgment nor for the costs of said appeal."

"Sec. 7. Within ten days after the commissioners shall file their report and proceedings under this act it shall be the duty of the mayor and council of the city instituting the condemnation proceedings herein provided for to call a special election in said city for the purpose of submitting to the electors of said city a proposition to vote bonds to raise money to pay the amount of the award made by the commissioners in their report. If a majority of the electors voting upon the proposition so submitted shall favor the same, the mayor and council of said city are hereby authorized to enact a proper ordinance providing for the issuance of bonds, which bonds shall run for not exceeding thirty years nor bear a greater rate of interest than six per cent. per annum, to be sold at par, payable semi-annually, and said bonds to be sold by the city and the proceeds thereof used for the payment of the award of commissioners. All bonds issued under the provisions of this act shall contain a recital that the same are issued under the provisions of this act and in conformity with its provisions, and such recital shall be conclusive in favor of all persons holding such bonds against the city and the taxpayers thereof that all conditions precedent and proceedings to authorize the issuing of such bonds have been made and had in conformity with this act. If the electors of the city vote bonds to raise money to pay the award fixed in the report of the commissioners, the city shall as soon as practicable thereafter pay the amount of the award to the county treasurer of the county in which the said city is located, and the right of possession to the property condemned shall thereupon vest absolutely in the city, and such city shall have the right to enter into and take possession thereof, and thereafter the said city shall hold the plant and property appropriated free from all liens and encumbrances.

"Sec. 8. If the city shall cause to be paid to the county treasurer of the county in which the city is located the amount in full of the award, such treasurer shall, upon demand of the persons severally entitled thereto, pay over the amounts of such fund to such persons as shall be respectively entitled thereto. Immediately upon the payment to the county treasurer of the amount of the award made by the commissioners any lien holder, mortgagee or holder of any encumbrance of the plant or property condemned shall have the right to commence an action in any court of general jurisdiction in the county in which said city is located, for the purpose of determining to whom the money so deposited shall be paid. In any such action service may be made by publication against defendants who are nonresidents of the state, in the

same manner as is now provided for such service by the code of civil procedure of the state of Kansas in case of non-resident defendants."

Thereafter the city of Kansas City, Kan. (hereinafter called the "City"), by its mayor and common council, passed a resolution declaring it necessary and for the best interests of the city to avail itself of the power conferred to condemn and take over the property and plant of the Metropolitan Water Company (hereinafter called the "Water Company") in the city, and describing such property, all as provided by section 2 of the act. Thereupon a petition was caused to be prepared by the city and presented to the judge of the district court of Wyandotte county, the county in which the city is located, praying the appointment of three commissioners to appraise the property about to be taken over, as provided by section 3 of the act. On the presentation of this petition, and in pursuance of the provisions of the act, the honorable judge of the district court appointed three commissioners, freeholders of the county, and resident citizens of the city, to make an appraisement of the property of the water company, and file a report, as provided by section 4 of the act. Thereupon the water company filed its petition and bond, in due form of law, for the removal of the controversy so raised between it and the city into this court. And upon the refusal of the judge of the district court to order a removal of the cause, and as the commissioners appointed were proceeding under the authority conferred upon them by their appointment to appraise the property and report, as ordered by the judge of the district court, the water company presented to this court its bill of complaint in due form, praying an injunctive order against said commissioners and the city, commanding them to proceed no further in making such appraisement, and filing a report of their findings, as provided in the act.

The grounds upon which the water company predicated its right to the relief sought by the bill are three in number, briefly stated as follows: (1) That the act is unconstitutional and void: (a) Because special legislation in contravention of the state Constitution; (b) because the act provides for the taking of property by the exercise of the power of eminent domain without making provision for just compensation to the owner; (2) that the commissioners appointed are citizens and resident taxpayers of the city, and, in consequence, are directly interested in a financial way in the controversy, hence are disqualified to act as commissioners; (3) because, by the filing of the petition and bond for removal of the controversy into this court, the jurisdiction and power of the commissioners and the city to proceed further ceased, and this court acquired jurisdiction. At a full hearing and argument before the court, had on notice, the right of relief was denied the water company on the ground first stated in its bill of complaint, and the act held constitutional. However, a restraining order was granted the water company on the ground that the controversy is one in its nature removable into this court, as the amount in controversy is sufficient to confer jurisdiction on this court, and as the water company and the city, parties to this controversy, are citizens of different states, it was therefore held the controversy was properly

removed and now pending herein, to be further proceeded with under the orders of this court. This view of the case rendered the question raised as to the disqualification of the commissioners appointed by the judge of the district court unnecessary of decision, and that question was expressly left undetermined. The city has now filed and presents its motion to remand this proceeding to the state court. It has also filed its motion to vacate the restraining order granted in the equity suit.

The sole question presented by these motions is this: Is the proceeding to condemn the property of the water company, in its very nature, as made by the act in question, such a controversy as was properly removable into this court at the time the petition and bond for removal were filed? It is freely conceded by counsel for the city, if the water company should feel aggrieved at the appraisement made by the commissioners, when such appraisement shall have been made, and should then appeal from the award of damages made to it by the commissioners to the district court, as by the act provided, the water company might then remove such controversy, arising on the amount of damages awarded, into this court for determination. But it is most earnestly insisted by counsel for the city that prior to that stage of the proceedings there can be no controversy between the parties removable into this court, hence the motion to remand must be sustained. Is this contention sound and in harmony with the conclusions reached in the adjudicated cases binding on this court? It will be noted section 7 of the act, among other things, provides:

"If the electors of the city vote bonds to raise money to pay the award fixed in the report of the commissioners, the city shall as soon as practicable thereafter pay the amount of the award to the county treasurer of the county in which the said city is located, and the right of possession to the property condemned shall thereupon vest absolutely in the city, and such city shall have the right to enter into and take possession thereof, and thereafter the said city shall hold the plant and property appropriated free from all liens and incumbrances."

Therefore, the result of the contention made by counsel for the city is that, by virtue of the terms of the act in question, the city may institute and carry forward the condemnation proceedings to the point of divesting not only the owner of the property of its title in and right to possession of the property, but may cut off and destroy all fixed liens and incumbrances on such property, and divest the owner of the very possession of the property itself, before there is raised such a judicial controversy between the parties as may be removed into this court.

In the light of the adjudicated cases, may that be done? I think not. And I am further of the opinion the recent case of Traction Company v. Mining Company, 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462, is decisive of the very question presented here. True, in that case, before the controversy was removed by the mining company into the federal court, the commissioners appointed by the county court had made their report, and this report was pending in the county court for confirmation; but the act further provided, if exceptions were filed to such report, a jury was required to be impaneled to try the issues

of fact raised by such exceptions, and either party could appeal to the Circuit Court, where a trial de novo might be had. But before the condemning party was entitled to take possession of the property condemned, in that case, it was required to pay the amount fixed by the commissioners and all costs of the proceedings, if no appeal were taken, and, if an appeal was taken to the Circuit Court, the act expressly provided that the owner must be paid all damages assessed on such appeal and all costs before the owner could be divested of its property. In other words, under the provisions of the Kentucky statutes, the questions of fact raised by the exceptions filed to the report of the commissioners was triable, in the first instance, to a jury impaneled in the county court, after notice to the owner of the property. Before the first instance trial of such questions of fact the case was held properly removable into the federal court, although the statute of that state provided for an appeal from the judgment entered on such trial to the Circuit Court, and a trial de novo there, the title of the owner to be divested only after payment of damages assessed and all costs on such appeal. Under the Kansas statute here involved the first instance trial is before the commissioners appointed by the judge of the district court, after notice to the parties, and the title and right of possession of the owner is divested and all fixed liens on the property cut off on payment of the amount awarded at the first instance trial, if the electors of the city approve the purchase at the price fixed by the commissioners, notwithstanding an appeal, as to the amount, is allowed by the owner to the district court. In delivering the opinion in the Traction Company Case, Mr. Justice Harlan, after adverting to the fact that no case or proceeding may be removed into the federal court unless it might have been there instituted in the first instance, says:

"The case, as made in the county court, was, beyond question, a judicial proceeding: it related to property rights, the parties are corporate citizens of different states, and the value of the matter in dispute, exceeds the amount requisite to give jurisdiction to the circuit court. It was therefore a proceeding embraced by the very words of the Constitution of the United States, which declares that the 'judicial power shall extend * * * to controversies * * * between citizens of different states,' as well as by the act of 1887 (Act March 3, 1887, c. 373, 24 Stat. 552 [U. S. Comp. St. 1901, p. 508]) which declares "that the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, * * * in which there shall be a controversy between citizens of different states." In view of these explicit provisions it is clear that the proceeding in the county court was a suit or controversy within the meaning both of the Constitution and of the judiciary act. We could not hold otherwise without overruling former decisions of this court."

The justice then proceeds to a review of the former decisions by that court. By a parity of reasoning, why, then, is not the case made up and triable before the commissioners appointed by the judge of the district court removable into this court? It relates to property rights. The owner of the property, and the city attempting to take this property for its own use, are corporate citizens of different states. The value of the property is largely in excess of the amount required to

confer jurisdiction on this court. It is true, as contended by counsel for the city, when the Traction Company Case was removed it was a proceeding pending in a court—that is, in a judicial tribunal—which both in name and in the strictest and fullest sense of the word was a court in all respects, and that the commissioners appointed by the judge of the district court in the present matter did not constitute a court in the strict sense in which that word is used. Wherefore, based upon this distinction it is urged by counsel for the city that the proceeding removed into this court was not a suit or controversy pending in a court of the state, and therefore not removable. However, it is not thought such distinction, if conceded to be well taken, or found to exist in fact, is either material or decisive of the question presented. For, if it be found to exist, the distinction is one of mere form, and not of substance, as observed by Mr. Justice Harlan in the Traction Company Case:

"Besides, a court always looks to substance and not to mere form. Mere forms are not of vital consequence in cases of condemnation. Kohl v. United States, 91 U. S. 367, 23 L. Ed. 449; United States v. Jones, 109 U. S. 513, 3 Sup. Ct. 346, 27 L. Ed. 1015."

The reason why the proceeding removed into this court is judicial in character is apparent from the power exercised by the commissioners appointed by the district court, and the district court in making such appointment. A judge of the district court in Kansas, at his chambers, may exercise such judicial powers as are conferred by law. The Constitution provides (article 3, § 16) as follows:

"The several justices and judges of the courts of record in this state shall have such jurisdiction at chambers as may be provided by law."

The hearing and determination of the petition presented by the city to the judge of the district court for the appointment of commissioners called for the exercise of judicial discretion and power. There was involved the sufficiency of the showing made by the petition under the law; the personnel and qualifications, under the law, of the persons named, in case the application found sufficient in law and the relief prayed therein granted; and the form of the order prescribing the duties of such commissioners, as fixed by the law of their appointment.

Again, article 3, § 1, of the Constitution provides for the exercise of the judicial power of the state as follows:

"The judicial power of this state shall be vested in a Supreme Court, district courts, probate courts, justices of the peace, and such other courts inferior to the Supreme Court, as may be provided by law."

While, as contended by counsel for the city, the commissioners appointed in this proceeding are not denominated in the act as a court, yet, as I conceive, they might have been so named, and the fact that they were not so named is not the test to be applied to the character of their acts, but rather the inquiry must be, does the performance of the duties enjoined upon them by the statute of their creation call for the exercise of judicial powers? By section 4 of the act above quoted, upon their appointment and qualification they are required to give notice of the time and place at which they will meet to value the

property. The form of the notice and the manner of its service upon the owner, and those interested in the property, to confer jurisdiction, is prescribed by the act. They are given power to adjourn the meeting fixed in the notice from time to time, as they may determine. At such meetings they are empowered to call and examine witnesses and take all steps and measures within their power to determine the true value of the property, and in the end to make a report, in writing, and provide for its filing and record, which report, when made, conclusively and forever determines the price which the city must pay to entitle it to take over the absolute title and possession of the property condemned against the rights of all the world, and over the protest and against the will of the water company, the owner, subject alone to the will of the voters of the city. And the effect of this determination may in no wise be changed or modified on appeal by the water company, save only in the contingency that, if the amount of the damages sustained for the loss of the property awarded by the commissioners to the owner is increased on such appeal, the city is obligated for its payment. It surely cannot be doubted the powers thus conferred by the act upon, and exercised by, the commissioners are, in the strictest sense and to their fullest extent, judicial in their nature, and their report is as much a judicial determination of the rights of the parties to the controversy as would be that of a verdict and judgment thereon in a constitutional court of our land. And, in my judgment, it was within the power of the Legislature to make the report of the commissioners final and conclusive between the parties and beyond appeal, an appeal being merely an act of grace on the part of the Legislature. The inherent nature of the proceeding and its binding effect on the parties in interest stamp its character. The name given by the law to the body exercising the power is an immaterial matter of form. As said by Mr. Justice Holmes in Mason City R. R. v. Boynton, 204 U. S. 570, 27 Sup. Ct. 321, 51 L. Ed. 629, which involved a controversy as to whether an appellant in a condemnation proceeding under the laws of the state of Iowa, and held by the Supreme Court of that state to be plaintiff in the action, could remove the controversy he had appealed into the federal court:

"Probably, too, the position of the parties under the act of Congress should be determined upon general consideration without regard to what has happened. Looked at as a whole, the Iowa statutes provide a process by which railroads and others may acquire land for their purposes which the owner refuses to sell. The first step is the valuation. Whether it is part of the case or not, it is a necessary condition to the proceedings in court. Against the will of the owner the title to the land is not acquired until the case is decided and the price paid. The intent of the railroad to get the land is the mainspring of the proceedings from beginning to end, and the persistence of that intent is the condition of their effect."

From a consideration of the many cases cited and commented on by counsel in their printed briefs, I am of the opinion a state is wholly without power, by the mere form of procedure prescribed, to deprive the owner of property sought to be taken by condemnation proceedings from removing such proceedings into a federal court, if such owner be a citizen of a foreign state and the value of the property exceeds the jurisdictional amount. For to concede such power to

the state would admit the right of the state by mere statutory enactment to preclude a court of the United States from the exercise of its established jurisdiction under the Constitution and laws of our country, which are supreme and binding on the state and individual citizens alike. And, indeed, I do not find the question here presented to be the rock on which the members of the highest court of our land have split in their consideration of cases kindred to this. The controlling and important question on which the members of that high court have divided was this: The exercise of the power of eminent domain is admitted by all to be the exercise of a power of sovereignty itself. Therefore it has been stoutly contended, on the one hand, the exercise of this sovereign power by a state could be carried forward in such manner and by such agencies as the state might provide, untrammeled by any interference from the courts of the nation; that such courts had no jurisdiction of a controversy which might arise between the state in the exercise of this sovereign power, and the owner of property sought to be taken, either in the first instance, or by removal from a court or other tribunal of the state to which the Legislature had committed the exercise of such power. On the other hand, it was contended, where the fundamental law imposes conditions on the exercise of this sovereign power by a state or its agencies, the question of the presence or absence of such imposed conditions from any given case involve a judicial inquiry, over which the national courts might take jurisdiction, either original or by removal, if the requisite jurisdictional facts as to citizenship and amount in controversy exist. And, as clearly appears from a reading of the opinions, the conflict raised by these two contentions was the question threshed out in Kohl et al. v. United States, 91 U. S. 367, 23 L. Ed. 449, Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206, Searl v. School District No. 2, 124 U. S. 197, 8 Sup. Ct. 460, 31 L. Ed. 415, and kindred cases, the latter contention being ultimately and finally established as the settled law of the land by a divided court in the Traction Company Case, 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462, to which reference has been made, as clearly appears from the language used by Mr. Justice Harlan in delivering the opinion:

"It is suggested that the state Legislature might have consummated the taking of the property of the Delaware corporation by means of a nonjudicial tribunal, and thus left open simply the question of compensation to the owner of the property taken. We do not perceive that this suggestion is at all material in the present discussion, for the state has chosen to provide for the taking by means of what is conceded to be a suit in one of its judicial tribunals. It is, in effect, conceded that the circuit court may be given jurisdiction of the question of compensation. But the contention is, that in no case can the judicial power of the United States be invoked until the question of taking is consummated by a proceeding in the particular local tribunal designated by the state. This view, it is supposed, finds support in the cases in which it has been held that an original suit directly against a state, or a suit against an officer of the state which, by reason of the particular relief sought, is in effect a suit against the state, may be limited by the state to suits brought in one of its own courts. Smith v. Reeves, 178 U. S. 436, 20 Sup. Ct. 919, 44 L. Ed. 1140. This illustration is wide of the mark; for the mandate of the Constitution of the United States (eleventh amendment) is that 'the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the

United States by citizens of another state or by citizens or subjects of any foreign state'; whereas, the judicial power of the United States and the original jurisdiction of the Circuit Courts, whatever may be ordained by state legislation, extends to suits in which there is a controversy between citizens of different states. The exercise by the Circuit Courts of the United States of the jurisdiction thus conferred upon them is pursuant to the supreme law of the land, and will not, in any proper sense, intrench upon the dignity, authority, or autonomy of the states; for each state, by accepting the Constitution, has agreed that the courts of the United States may exert whatever judicial power can be constitutionally conferred upon them. In the exercise of that power a Circuit Court of the United States, sitting within the limits of a state and having jurisdiction of the parties, is, for every practical purpose, a court of that state. Its function, under such circumstances, is to enforce the rights of parties according to the law of the state, taking care, always, as the state courts must take care, not to infringe any right secured by the Constitution and the laws of the United States. It should, however, be remarked that there is nothing in the Kentucky statute which indicates any purpose on the part of the Legislature of that commonwealth to fly in the face of the above cases or to evade the principles announced in them. It is not to be implied from the statute in question that the state intended to exclude or supposed that it could exclude from the federal courts jurisdiction of any suit to which the judicial power of the United States extended."

That further dispute over this difficult and important question is conceded by the Supreme Court itself as closed, appears from the language employed by Mr. Justice Holmes delivering the opinion of the court in Mason City R. R. v. Boynton, supra, wherein he says, in opening the discussion of that case:

"In Madisonville Traction Company v. Saint Bernard Mining Co., 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462, it was decided that proceedings of this character could be removed to the United States Circuit Court."

It follows, from what has been said, I am of the opinion the controversy made before the commissioners in this case was judicial in its nature and properly removable into this court by the water company, a citizen of a foreign state. That this court by the removal has jurisdiction over the controversy raised between the parties by the proceedings taken by the city under the statute.

The motion to remand will therefore be overruled and denied. It is so ordered.

If the city desires to proceed with the condemnation, under the statute, in this court, commissioners to appraise and condemn the property, as provided in the act, will be appointed on application made for that purpose on one day's notice to opposing party or its counsel. Or, should counsel for the respective parties agree and stipulate as to the personnel of such commissioners, the court will at once make such appointment on the filing of the stipulation.