**NATURAL GAS PIPELINE CO. OF AMERICA, Appellant,**

v.

**Vada WHITE, Individually and as Independent Executrix of the Estate of J. M. White, Deceased, et al., Appellees.**

**No. 7891.**

Court of Civil Appeals of Texas.

Amarillo.

Nov. 25, 1968.

Rehearing Denied Dec. 23, 1968.

Culton, Morgan, Britain & White, Amarillo, L. A. White, Amarillo, of counsel, for appellant.

Witherspoon, Aikin, Thomas & Langley, Hereford, John D. Aikin and Thomas W. Kendrick, Hereford, of counsel, for appellees.

NORTHCUTT, Justice.

This appeal is from a jury verdict in a condemnation proceeding, in which the jury's verdict was for $42,960.50. Natural Gas Pipeline Co., hereinafter referred to as appellant, brought this action in the County Court of Deaf Smith County, Texas, against Vada White, et al., hereinafter referred to as appellees, to recover the acquisition of a natural gas pipeline right-of-way across lands owned by or in possession of appellees and located in Deaf Smith County.

Appellant's first point of error is as follows:

"The case having been put to trial on a date determined by the Court arbitrarily and without regard to the provisions of the Rules of Civil Procedure, the trial court committed an abuse of discretion in failing to grant Appellant's motion for new trial."

Under this point it is contended the court erred in failing to sustain appellant's motion for continuance. On January 12, 1968, appellant filed its motion to stay the proceedings in the county court contending the case had been transferred to the federal court. That motion was overruled by the county court.

It is appellant's contention that when the trial court sustained the appellees' motion to strike from appellant's pleading the limitations of the rights which appellant sought to acquire by eminent domain, that, that placed appellant in the position of a defendant and it had the right to remove the case to the federal court. With this contention we cannot agree. The point is whether the court erred in sustaining the appellees' motion to strike the limitations or the rights which appellant sought to acquire.

To better understand appellant's contentions on this point, we refer to the events that occurred as contended by appellant as follows:

"Appellant filed its objections to the award of the Commissioners on September 11, 1967. At this point, the proceeding *for the first time* became a suit at law.

On October 12, 1967, Appellant filed its First Amended Petition in Condemnation in which there was expressly excluded any taking by Appellant of the right to damage any crops at any time in the future off of the right of way strip, and in which was also excluded any right to damage any crops on the right of way strip subsequent to the year of initial construction. The amended petition also expressly left unaffected by the exercise of the right of eminent domain numerous rights of ownership to the landowners specifically designated in such pleading.

On November 10, 1967, the respondent landowners filed their response to the First Amended Petition, and therein set

out numerous exceptions to such Petition, requesting that substantial portions thereof be stricken. The certificate to such pleading of the landowners shows that it was mailed to Natural's attorneys on November 10, 1967. That date was a Friday. Thereafter, on the following Wednesday (November 15, 1967) Natural filed its removal papers, predicated upon the circumstance that the attack by way of the motions to strike by the landowners challenged the right of Natural to acquire a limited easement, and the case thereupon became removed to the United States District Court at Amarillo.

This case was tried commencing February 5, 1968, pursuant to a setting made by the County Court of Deaf Smith County *during the month of December, 1967, at a time when the case was pending in the United States District Court, and during which the County Court had no jurisdiction to make a setting of the case or take any action whatsoever.*

As pointed out above, the case was removed to Federal Court on November 15, 1967. It was later remanded to the County Court from the Federal Court, by an order entered on January 29, 1968, certified copy of which *dated February 2, 1968,* was not filed in the County Court until February 5, 1968, the date the trial was commenced.

From November 15, 1967, until at least January 29, 1968, (and probably until February 5, 1968), the County Court of Deaf Smith County held no jurisdiction to place the case on the jury docket, to set the case for trial, or take any action whatsoever in respect thereto."

The removal of cases from state courts to the federal courts is governed by federal statutes. 28 U.S.C. Sections 1441–1450. The right to remove a case as set out in such statutes is given only to the defendant. In this case the appellees were the defendants and not the appellant. By action of Congress in passing the above Sections 1441–1450 determines in what instances suits may be removed from the state to the federal courts. Since the passage of such sections covering removals have in terms given the privilege of removal to defendants alone except under certain conditions, none of which are here involved, the plaintiff (appellant) attempted to do what it had no right or authority to do. Consequently, the attempt to remove the case to the federal court was of no force and effect. Mason City & Fort Dodge Rail Co. v. Boynton, 204 U.S. 570, 27 S.Ct. 321, 51 L.Ed. 629; Chicago, R. I. & Pac. Ry. Co. v. Stude, 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317; Shamrock Oil & Gas Corp. v. Sheets et al., 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214. We overrule appellant's first point of error.

■ Appellant's second and third points of error will be considered together. By the second point it is contended the court erred in admitting into evidence over appellant's objection the testimony of Dan B. Grubb taken at the original hearing before the Special Commissioners. By the third point it is contended the court erred in striking from appellant's pleading the limitations on the rights which appellant sought to acquire by eminent domain. It is appellees' contention the court was correct in admitting the evidence of Grubb and in striking Paragraphs 8(a), (b), (c) and 9(a), (b), and (c) limiting the rights which appellant sought to acquire by eminent domain.

The testimony of Dan B. Grubb, shown to be in Wharton County, Texas, was permitted to be read over the objection of appellant from a court reporter's transcript of proceedings before the Special Commissioners on the original hearing in the eminent domain proceedings. In connection with the introduction and admitting of a portion of the testimony of Mr. Grubb the following took place:

"MR. AIKIN: May it please the Court, gentlemen of the Jury, the Respondents, the Whites here, are going to offer in evidence a portion of the testimony of a

Mr. Dan B. Grubb, a representative of Natural Gas Pipeline Company of America who appeared before the 3 Commissioners who heard testimony and assessed damages to the Whites from which an appeal was taken to this Court.

"MR. WHITE: We move that the Jury be instructed to disregard the statement by counsel, if the Court please.

"MR. AIKIN: Your Honor, we have already gone through this once and the Court overruled the objection.

"THE COURT: Overruled.

"MR. AIKIN: Mr. Grubb testified before the Commissioners on the 18th day of August, 1967, here in this Courtroom and the Court Reporter took down the testimony whose certificate is attached hereto is Dorothy C. Timmons, a Notary Public and Court Reporter in and for Potter County, Texas, and if the Court will permit me to use that copy, I will get Mr. Kendrick to read the questions and I will read the answers to make it a little more like testimony before you so you can get a better idea about what the testimony is. The question propounded, Mr. Kendrick will read or questions asked by me to Mr. Grubb at this hearing that was held before these Commissioners in this room on August 18th, 1967, relating to this same property.

\*　　\*　　\*　　\*　　\*　　\*

"Q. What is your name, please, sir?

"A. Dan B. Grubb.

"Q. Where do you live, please, sir?

"A. Muleshoe, Texas.

"Q. How long have you been employed by Natural Gas Pipeline Company of America?

"A. Five and a half years.

"Q. Have you started digging—you have started digging this line in Bailey County, haven't you?

"A. Yes, we have.

"Q. Have you seen that down there?

"A. Yes, sir.

"Q. And this in Deaf Smith will be dug exactly the same, is that right?

"A. Yes, sir.

"Q. All right, are you conversant with the terms of the contract that Natural has with—what is that San Antonio company that's laying—

"A. H. B. Zachery Company?

"Q. Yes, H. B. Zachery Company, are you conversant with that contract?

"A. Yes, sir, I am.

"Q. Your rights under the contract and their obligations under the contract, you are familiar with them?

"A. Yes, sir.

"Q. Now you have the right to go in here and open up this pipeline any time you need to do so, don't you?

"A. Yes, sir, that is correct.

"Q. You have a right to go in here once a month and dig this pipe up if you desire to do so, don't you?

"A. Yes, sir.

"Q. And this farmer doesn't have any right whatsoever to stop you, does he? You could dig it up once a year or ten times a year?

"A. That is correct.

"Q. Now let's just say that they come back in here next year about the time we are trying to water our crops—you have a right to do this, don't you?

"A. Yes, sir.

"Q. Now let's say you got hold of some faulty pipe here in Deaf, Smith County—you get faulty pipes once in awhile, don't you?

"A. We have defects in pipes, yes.

"Q. Anybody that buys and lays much pipeline gets defective pipe from time to time?

"A. That is correct.

"Q. Your right to do what you are condemning here comes absolutely first and prior, doesn't it?

"A. If we need to go in and open the ditch up and do something to the line, yes, sir, we have a right to do that.

"Q. If you left that ditch open for ninety days or six months,—

"MR. WHITE: May we have the additional objection, Your Honor, that all these questions are leading questions recorded and to that ruling we take exception to the Court overruling, each of these questions are leading questions at this point.

"MR. AIKIN: Yes, sir. We submit to the Court that this was cross examination of Natural's witness at a proceeding before these Commissioners and that we had every right in the world to lead, this is not only proper—

"MR. WHITE: There is no need for a speech, just let the Court rule on it, I was asking is we could have the same objection.

"MR. AIKIN: It's perfectly proper, YOUR HONOR, to lead on cross examination.

"THE COURT: Overruled and you may enter your exception.

"MR. WHITE: That would be a running objection too?

"THE COURT: That's right, a running objection.

"Q. If you left that ditch open for ninety days or six months as far as that is concerned, there wouldn't be a thing in the world he could do about it because it is your right to go in there and alter and change, replace and repair that pipe, would there?

"A. I'm going to answer your question like this—

"Q. Just answer the question so we will know the answer to it.

"A. No, there isn't.

"Q. As far as the redigging it up, if it is dug up three times in the next thirty years, as far as this taking is concerned your company can come in here and dig it up and put all of the topsoil back on top of the pipe and put caliche back on top of the top and leave rocks standing all over your right of way, can't they?

"A. Yes, sir.

"Q. That is true?

"A. Yes, sir.

"Q. And they have the absolute right to come back in here in five years then and over this whole right of way, leave it covered with rocks twelve inches big if they want to, don't they?

"A. Yes, sir.

"Q. Tell me whether or not sizeable rocks will break farm machinery when they are trying to farm?

"A. Yes.

"Q. And when you break farm machinery repairs are expensive and time consuming, aren't they?

"A. Yes, they really are.

"Q. And parts cost a lot of money?

"A. Sir?

"Q. Parts for these implements cost a lot of money, don't they?

"A. Yes, sir."

Appellant objected to this testimony and was given a running objection to all of it.

Bearing in mind the limitations hereinafter set out sought by appellant that was stricken from appellant's pleadings as insisted by the appellees and the evidence of

Grubb, the introduction of such evidence was prejudicial error. It was clearly shown to be confusing to the jury when the jury sent into the court the following question: "We do not recall the following being covered: In the event the line ditch was reopened by Natural for repairs, etc. would the Co. (Natural) be required to put the land back in the same manner as before? (The same as agreed prior to laying the line)". The court instructed the jury that the evidence being closed the court was not permitted to answer the question submitted. Surely such evidence as to what appellant might do in the future that would damage appellees would not be admissible.

We do not consider the evidence read from a court reporter's transcript of the proceedings before the Commissioners on the original hearing in the eminent domain proceedings as testimony of a witness given at a former trial of the same case on substantially the same issues. It is stated in Dueitt et ux. v. Harris County, Tex.Civ. App., 249 S.W.2d 636 (writ ref'd) as follows:

"Further, the Supreme Court of this State has held, in the case of Brazos River Conservation & Reclamation Dist. v. Allen, 141 Tex. 208, 171 S.W.2d 842, that the special commissioners in condemnation proceedings are not qualified or authorized to pass on questions of law, and that their hearings are not required to be held in strict conformity with the laws of evidence and other procedure observed in a formal trial."

The trial here before the county court was a trial de novo and the court erred in admitting the evidence of Mr. Grubb heard by the Commissioners. Lone Star Gas Co. v. State, et al., 137 Tex. 279, 153 S.W.2d 681. See also Carter v. Irvine, Tex.Civ. App., 77 S.W.2d 247.

Until appellant appealed from the Commissioners' award it was administrative in nature and never became a civil action until Sections 6 and 7 of Art. 3266, Vernon's Ann.Tex.Civ.St. have been complied with. It is stated in Pearson v. State, 159 Tex. 66, 315 S.W.2d 935 as follows:

"An action to condemn land is a special statutory proceeding, wholly administrative in nature, at least until the commissioners' decision is filed with the county judge. The course which it takes after the filing of their award is governed by Sections 6 and 7 of Art. 3266, Vernon's Ann.Tex.Civ.Stat., which read as follows:

'6. If either party be dissatisfied with the decision, such party may within ten days after the same has been filed with the county judge file his objection thereto in writing, setting forth the grounds of his objection, and thereupon the adverse party shall be cited and the cause shall be tried and determined as in other civil causes in the county court.'

'7. If no objections to the decision are filed within ten (10) days, the County Judge shall cause said decision to be recorded in the minutes of the County Court, and shall make the same the judgment of the court and issue the necessary process to enforce the same.'

By the express terms of Section 6, the filing of timely objections confers jurisdiction upon the county court to hear and determine the issues in the exercise of its judicial powers. It thus is clear that the proceeding becomes a civil case if objections are filed within the prescribed period, and either party has the right to appeal from a final judgment thereafter entered by the county court. Article 3268, Vernon's Ann.Tex.Civ. Stat., expressly recognizes the right to appeal 'from the decision of the county court', but there is no provision authorizing an appeal from a judgment entered

on the award. In the present case neither party complied with the provisions of Section 6 of Art. 3266, and we must decide whether the proceeding, originally administrative in character, may be converted into a judicial action in any other manner."

■ Among other limitations sought by appellant, and struck by the court, the trial court struck from appellant's pleadings where it pleaded that after the period of initial construction (it was to be completed during the year 1967) it would be liable for loss or damage to said crops on the right-of-way strip resulting from the construction, operation or maintenance of appellant's line on said land. The rule seems to be well settled in condemnation cases that the party condemning may limit the rights and that the trial court should instruct the jury as to such limitation actions. In Texas Power & Light Company v. Cole, 158 Tex. 495, 313 S.W.2d 524 it is stated:

"However, plaintiff shall have no right to occupy permanently any part of said strip, except the portion occupied by the structures constituting its transmission line above described, and shall have no right to fence or enclose said strip, or to use it for any purpose other than as aforesaid, and the right of defendants and subsequent owners of said land to cultivate said strip, raise crops thereon, or use it for pasturing live stock or for any other purpose, not inconsistent with plaintiff's enjoyment of the easement and right of way above described, shall not be obstructed or interfered with, except to the extent above stated.

'The right of ingress and egress aforesaid shall not include the right in the future, after the original construction of said transmission line to destroy or damage any crops, fences or other property of defendants or of any subsequent owner of said land without payment to defendants or said owners of reasonable compensation; provided, however, that no compensation need be paid for the removal from said strip of buildings or other structures, or of growth, other than crops, shrubs, and fruit trees less than 15 feet high, which may endanger or interfere with said line, as aforesaid.' "

\*　　\*　　\*　　\*　　\*　　\*

"It was the function of the petition to describe the nature and extent of the easement required. An amendment as to the easement rights was effected by the filing of a supplemental petition in the County Court at Law. It thereupon became the duty of the judge of that court to explain in detail the extent of the easement sought to be condemned in order that the jury might properly evaluate the value of both the fifty foot strip and the balance of the tract exclusive of the strip before the taking, as well as afterwards. Such instructions accurately describing the required easement and the incidents thereto can hardly be said to constitute a comment upon the weight of the evidence."

See also Texas Power & Light Co. v. Lovinggood, Tex.Civ.App., 389 S.W.2d 712.

In the case at bar the trial court struck the limitations sought in the condemnation and refused the appellant the right to explain in detail the extent of the easement sought and admitted the evidence of Grubb as above set out.

We sustain appellant's second and third assignments of error and reverse the case for a new trial. Since we have determined that the trial court committed such prejudicial error in striking the above set out portions of appellant's request for continuation and admitted the evidence of Mr. Grubb was such as to require reversal of this case, we deem it unnecessary to pass on the other assignments of error as they may not arise in a new trial. Judgment of the trial court is reversed and remanded.