## DELMAS v. INSURANCE COMPANY.

1. On a writ of error to a State court, this court cannot revise a decision founded on the ground that a contract is void on the general principles of public policy or morality, when that is the only ground on which the contract is held to be void.
2. But if the decision of a State court is based upon a constitutional or legislative enactment, passed after the contract was made, this court has jurisdiction to inquire whether such legislation does not impair the obligation of the contract, and thereby violate the Federal Constitution.
3. In the prosecution of that inquiry, this court must decide for itself, whether any valid contract existed where the legislation complained of was had, and in making up its judgment on that question is not concluded by the decisions of the State court.
4. This court is of opinion that the notes of the Confederate States, in ordinary use as money during the rebellion, might constitute a valid consideration for a contract; and that a provision in the constitution of a

State, subsequently adopted, declaring such contracts void, was an impairing of the obligation of such contract within the meaning of the Federal Constitution.

5. A judgment of a State court, holding such a contract void, expressly based on the constitutional provision and not on general ground of public policy, must be reversed in this court.

ERROR to the Supreme Court of Louisiana; the case being this:

J. Menard, of New Orleans, gave to one Delmas an obligation, the consideration of which (as was said) was Confederate money. On this obligation Delmas obtained a judgment. Subsequent to the date of the obligation given, as above said, the State of Louisiana adopted a new constitution of government, the 127th article of which thus ordained:

"All agreements, the consideration of which was Confederate money, notes or bonds, are null and void; and shall not be enforced by the courts of this State."

So far as to Delmas and the debt to him.

The same Menard, above mentioned, gave also, May 28th, 1857, to the Merchants' Insurance Company, a note payable at one year, and secured by mortgage. On the 16th March, 1866, the note was thus indorsed:

"The payment of this note is without novation extended to 1st of December, 1866.

"J. MENARD."

The mortgage also was reinscribed; but to neither the extension of the note nor to the reinscription of the mortgage was there any stamp affixed.

The Stamp Act of June 30th, 1864,* it is here perhaps necessary to remind the reader, specifies in a schedule a great number of instruments of writing (not including, however, either the extension of the time of payment of a promissory note, or the "reinscription" of a mortgage) on which

---

* 13 Stat. at Large, 298.

stamps must be affixed, and prescribes the amount of the stamp; and says, also:

" Agreements or contracts other than those specified in this schedule, 5 cents."

In this state of things, one Henderson—having in his hands a sum of money belonging to Menard, on which both Delmas and the insurance company set up respectively liens under the judgment and mortgage above mentioned—filed a bill in one of the State courts of Louisiana, in the nature of an equitable bill of interpleader, to have it determined by the court to which of the claimants upon it the money should rightfully be paid. Coming in to interplead, the insurance company, on the one hand, impeached the judgment of Delmas because it was based upon a contract the consideration of which was Confederate money; and Delmas, on the other, impeached the mortgage of the insurance company because neither the extension of the note nor the reinscription of the mortgage had a stamp affixed to it.

The court where Henderson filed his bill decided both matters in favor of the insurance company; and the Supreme Court of Louisiana, where the matter went on appeal, did the same.

As respected the matter of the consideration of Delmas's note, it said (assigning no other reason):

" His judgment was based on a contract or agreement the consideration of which was Confederate money. *To render the decree asked for would be to enforce a prohibited agreement. (Article 127 Constitution.)*"

In thus stating the reasons of its judgment, the Supreme Court of Louisiana followed the Code of Practice of the State, which requires it to state those reasons by citing as exactly as possible the law on which it founds its opinions.*

As respected the stamps, it decided that the extension of time on the note was not such an agreement as required

* Code, article 909.

stamps; nor the reinscription of the mortgage either. From this decision Delmas brought the case here, as within the 25th section of the Judiciary Act,* alleging that the validity of the article 127 of the Constitution of Louisiana had been drawn in question as impairing the provision of the Federal Constitution forbidding any State to pass a law violating the obligation of contracts, and that the Supreme Court had decided in favor of its validity, and also because the construction of an act of Congress about stamps had been drawn in question, and that the court below had decided that it was inapplicable.

*Mr. T. J. Durant, for the plaintiff in error:*

The renewal of the note is clearly a new agreement, and comes under the head of " Agreements other than those specified in this schedule."

The same may be said of the reinscription of the mortgage. A mortgage to affect third persons must be publicly inscribed on records kept for that purpose.† This preserves the mortgage during ten years. The effect ceases, even against the contracting parties, if the inscriptions have not been *renewed* before the expirations of their time, in the manner in which they were first made.‡ Nothing could come more completely within the meaning of the Stamp Act than such a reinscription; it is a *renewal* of the mortgage, and that is the case provided for in Schedule B.

*Mr. A. G. Riddle, for the defendant in error:*

The extension of the note did not require to be in writing at all, and neither the extension nor reinscription required a stamp.

On the other matter this court has no jurisdiction. In *Bethel* v. *Demaret*,§ a writ taken under an assumption that the case was within the 25th section, seems to settle the case. The syllabus there is:

---

* See the sections, *supra*, 5, 6.   † See Civil Code of Louisiana, art. 3314.
‡ Ib. art 3333.                     § 10 Wallace, 587.

"The decision of a State court which simply held that promissory notes given for the loan of 'Confederate currency,' together with a mortgage to secure the notes, were nullities on the ground that the consideration was illegal according to the law of the State at the time the contract was entered into, is not a decision repugnant to the Constitution."

The writ in that case was accordingly dismissed, as not within the 25th section.   So we ask that this one may be. The judgment of the Supreme Court of Louisiana would have been the same if the article 127 had not been referred to.*

Mr. Justice MILLER delivered the opinion of the court.

The plaintiff in error relies upon two propositions ruled against him by the Supreme Court of Louisiana as bringing the case within the revisory power of this court.

1. The first of these is that the court below decided that a judgment in his favor, which was otherwise conceded to be a valid prior lien, was void because the consideration of the contract on which the judgment was rendered was Confederate money.

2. That the note under which the insurance company claimed had been extended as to time of payment, and the mortgage given to secure it reinscribed, without having the stamps affixed which such agreements required.

1. In regard to the first of these propositions this court has decided, in the case of *Thorington* v. *Smith*,† that a contract was not void because payable in Confederate money; and notwithstanding the apparent division of opinion on this question in the case of *Hanauer* v. *Woodruff*,‡ we are of opinion that on the general principle announced in *Thorington* v. *Smith* the notes of the Confederacy actually circulating as money at the time a contract was made may constitute a valid consideration for such contract.

The proposition involved in this conclusion, however, does

---

\* Palmer v. Marston, *supra*, 10; Sevier v. Haskell, *supra*, 13.
† 8 Wallace, 1.                                    ‡ 10 Id. 482.

not of itself raise one of those Federal questions which· belong to this court to settle conclusively for all other courts. When a decision on that point, whether holding such contract valid or void, is made upon the general principles by which courts determine whether a consideration is good or bad on principles of public policy, the decision is one we are not authorized to review. Like in many other questions of the same character, the Federal courts and the State courts, each within their own spheres, deciding on their own judgment, are not amenable to each other.

Accordingly, in several cases coming here on writ of error to the State courts where the same question of the sufficiency of Confederate money and the sale of slaves as a consideration for a contract was the error complained of, we have dismissed the writ because it appeared that the State court had rested its decision on this ground·of public policy, tested by which the contract was void when made.\*

In *Bethel* v. *Demaret,* the first of these cases, the opinion of the Supreme Court of the State was expressly based on the general doctrine and the previous decisions of that court, and not on the constitutional provision. In the next case, *The Bank of West Tennessee* v. *The Citizens' Bank of Louisiana,* that court speaks both of the constitutional provision and the adjudications.of that court made prior to the adoption of the article 127 of the Constitution. And as it was apparent from the record that the judgment of the court of original jurisdiction was rendered before that article was adopted, we could not entertain jurisdiction when the decision ·in that particular point was placed on a ground which existed as a fact and was beyond our control and was sufficient to support the judgment, because another reason was given which, if it had been the only one, we could review and might reverse.

In the case before us that court say in express language that they hold the judgment of the plaintiff in error void

---

\* Bethel *v.* Demaret, 10 Wallace, 537; Bank of West Tennessee *v.* The Citizens' Bank, *supra,* 9; Palmer *v.* Marston, *supra,* 10; Sevier *v.* Haskell, *supra,* 12; Jacoway *v.* Denton, not reported.

because the 127th section of the State constitution declares that it shall be so held. That article reads as follows: "All agreements, the consideration of which was Confederate money, notes, or bonds, are null and void, and shall not be enforced by the courts of this State." This provision was made a part of the constitution of Louisiana after the contract now in dispute was made, and if the contract was valid then, this provision clearly not only impairs but absolutely destroys its obligation within the meaning of the tenth section of the first article of the Constitution of the United States.

It has long been settled that under the act of Congress of 1824, and by reason of the peculiarity of the practice in the courts of that State, the opinions delivered by the appellate court of Louisiana are treated by us as part of the record, and are looked into to learn what they decided when their judgments are brought here by writs of error.[*] So long as they in those opinions placed the invalidity of this class of contracts on the ground of a public policy existing at the time the contract was made, or so long as they left us to infer that such was the ground, having once before so decided, the decision presented no question over which we had any revisory power. But when, going a step further, they expressly rest the decision of the same question on the constitutional provision we have quoted, and on no other ground, the question necessarily arises, is that provision in conflict with the Constitution of the United States? And the answer to this question depends solely on the validity of the contract when made; for, if valid then, the Federal Constitution protects it from all subsequent acts of State legislation, whether in the form of constitutional or ordinary legislative enactments.[†]

It may be said that since we know that the Supreme Court of Louisiana has in other cases held this class of contracts void in their inception, for the very reasons for which

---

[*] Cousin *v.* Blanc's Ex., 19 Howard, 207; Almonester *v.* Kenton, 9 Id. 9.
[†] Hart *v.* White, 13 Wallace, 650.

the constitution annuls them, we are bound to follow the State courts in that decision. But, as we have already said, this is not the class of questions in which we are bound to follow the State courts. It is not based on a statute of the State, or on a construction of such a statute, nor on any rule of law affecting title to lands, nor any principle which has become a settled rule of property, but on those principles of public policy designed for the protection of the State or the public, of which we must judge for ourselves, as they do when the question is fairly presented.

Besides, this court has always jealously asserted the right, when the question before it was the impairing of the obligation of a contract by State legislation, to ascertain for itself whether there was a contract to be impaired. If it were not so, the constitutional provision could always be evaded by the State courts giving such construction to the contract, or such decisions concerning its validity, as to render the power of this court of no avail in upholding it against unconstitutional State legislation.*

These views are in precise conformity to what has been held by this court in the analogous subject of slaves as a consideration of contracts made before the abolition of slavery. The case of *Palmer* v. *Marston*, decided at this term, was a writ of error to the Supreme Court of Louisiana, on the ground that that court had held such a contract void. And it was urged that it was so held by that court under section 128 of the Louisiana constitution, which declared contracts for slaves void, in the same terms that section 127 declared contracts for Confederate money void; but this court dismissed the writ of error for want of jurisdiction, because the Supreme Court of Louisiana had said in its opinion that it did not place the decision on the constitutional provision, but on the ground that the same principle had been promulgated and acted on in that court before the constitutional provision was adopted.

---

* Bridge Proprietors *v.* Hoboken Co., 1 Wallace, 145; Jefferson Branch Bank *v.* Skelley, 1 Black, 456.

Yet, in the case of *Hart* v. *White*,* in which the Supreme Court of the State of Georgia held such a contract void by reason of a provision in the constitution of that State, adopted after the contract was made, this court entertained jurisdiction and reversed the judgment. This was done on the ground taken in the present case, namely, that the contract being in our judgment valid when made, any constitutional provision which made it void was in violation of the Federal Constitution on the subject of impairing the obligation of contracts; and any judgment of a State court resting on such enactment of a State constitution, after the date of the contract, must be reversed in this court on error.

We are of opinion, for these reasons, that there was error in the Supreme Court of Louisiana in deciding that the judgment of Delmas was void by reason of the constitutional provision of that State concerning contracts for which Confederate notes were the consideration.

As the case must be reversed for this reason, we might pass without examination the question raised in regard to the necessity of stamps on the extension of time for the payment of the note, and on the reinscription of the mortgage; but as that may arise again in the further progress of the case, we will dispose of it now. As regards the latter, which is the mere act of the party who holds the mortgage, we are at a loss to perceive any ground on which this act of reinscription—the same as recording a deed the second time—can be held to be an agreement requiring a stamp. The assent of the mortgagor is not necessary, nor was it asked or given. Nor do we believe it was the purpose of the Stamp Act to hold a mere extension of the time of payment, indorsed on the note, without any consideration for such extension, or change in any other term or condition of the contract, to be an agreement requiring a stamp.

In the case of *Pugh* v. *McCormick*,† it was held that the indorsement of a note by which the bill passed to the indorsee,

---

did not require a stamp, and also that a writing on the back of the note by the indorser waiving demand, protest, and notice, and agreeing to be liable without them, was good without a stamp. We think this ample authority for holding that a gratuitous extension of time did not require a stamp, as both the writings relied on in that case have more of the elements of an agreement than the one before us. In the matter of the stamp, we think the court committed no error.

But for the error first considered the judgment is RE-VERSED, and the case remanded for further proceedings,

IN CONFORMITY TO THIS OPINION.