CHICAGO, R. I. & P. R. CO.
v. KAY et al.

CARBUHN et al. v. CHICAGO, R. I.
& P. R. CO. et al.

Civ. Nos. I–80 to I–83, I–85 to I–101.

United States District Court
S. D. Iowa, W. D.

July 19, 1952.

mie County taken under the power of eminent domain in the change of location of its line of railroad between Atlantic and McClelland, Iowa.

In January, 1952, pursuant to authority granted by the Iowa State Commerce Commission so to condemn, Sec. 471.10, Code of Iowa, 1950, I.C.A., the condemnor instituted proceedings under Chapter 472 of the Code of Iowa, 1950, I.C.A., by filing with the sheriff of Pottawattamie County a written application conformed to Sec. 472.3. The sheriff appointed a commission, which assessed the damages as to each tract involved and filed its written report with him. The ten tracts are owned by nine different property owners.

Condemnor served notices of appeal from the awards, as permitted by Sec. 472.18, docketing the several notices of appeal as ten separate cases in the District Court of the State of Iowa in and for Pottawattamie County. Thereafter, condemnor, under the claimed authority of Tit. 28, Sec. 1441(a) United States Code, filed in this court petition for removal of each of the ten cases, which are docketed separately here. The petitions for removal are in due form. In each of these cases the landowner has filed a motion to remand, claiming in each that this court "is without jurisdiction either to determine or pass upon any further question" in the case, and that the appeal pending in the state court "is not removable to this court for the reason that the Chicago, Rock Island and Pacific Railroad Company is not the defendant in said action within the meaning of Section 1441 of Title 28 United States Code so as to be entitled to remove said action." Contemporaneously with the motion to remand, each property owner has attempted to comply with Sections 472.21, 472.22 of the Iowa Code, I. C.A., by filing what is denominated a "petition," in which the owner is designated as plaintiff, and which is filed "subject to the ruling on his motion to remand this action to the District Court of Iowa, and in compliance with the Statutes of Iowa." Sections 472.21, 472.22 are as follows:

"*472.21 Appeals—how docketed and tried.* The appeal shall be docketed in

A. B. Howland (of Gamble, Read, Howland, Gamble & Riepe), Des Moines, Iowa, for condemnor Railroad Co.

Raymond A. Smith (of Peterson, Smith, Peterson, Beckman & Willson), Council Bluffs, Iowa, and G. C. Wyland, Avoca, Iowa, for certain landowners.

John M. Peters (of Hess & Peters), Council Bluffs, Iowa, for certain landowners.

Daniel J. Gross (of Gross, Welch, Vinardi & Kauffman), Omaha, Neb., for certain landowners.

RILEY, District Judge.

There has been no order of consolidation of the twenty separate cases here involved, but since the motions to dismiss in ten of them and the motions to remand in the remaining ten make them companions, they will be treated as consolidated for the purpose of the motions and the present rulings thereon.

All of the cases are related to condemnation proceedings commenced by the Chicago, Rock Island and Pacific Railroad Company as condemnor of lands in Pottawatta-

the name of the owner of the land, or of the party otherwise interested and appealing, as plaintiff, and in the name of the applicant for condemnation as defendant, and be tried as in an action by ordinary proceedings."

"472.22 Pleadings on appeal. A written petition shall be filed by the plaintiff on or before the first day of the term to which the appeal is taken, stating specifically the items of damage and the amount thereof. The defendant shall file a written answer to plaintiff's petition, or such other pleadings as may be proper."

Prior to docketing in the state court the several appeals just described which were removed to this court, the condemnor caused to be served on the sheriff as to each tract of land involved a "Notice of Appeal from Assessment of Damages by Chicago, Rock Island and Pacific Railroad Company." It was addressed to the sheriff and the landowner, informed each of the condemnor's appeal, and recited: "Said appeal is taken to the United State District Court for the Southern District of Iowa, Western Division, at Council Bluffs, Iowa, and will be docketed in the office of the Clerk of said Court." These notices were docketed in this court, along with a complaint contemporaneously filed in each case, wherein the condemnor named itself as plaintiff and the landowner as defendant and alleged requisite diversity and amount in controversy, authority to construct the new line of railroad, appropriate authority from the Iowa State Commerce Commission to proceed by condemnation, the institution of the proceedings before the sheriff of Pottawattamie County, the appointment of the commissioners, their report and the appeal from the award and assessment of damages by serving the notice (a copy is attached to each complaint), a description of the premises involved, the actual damages claimed to be sustained by the taking of the lands and the award of the commissioners. A transcript of the prior proceedings is attached to the complaint. The prayer of the complaint is, "that upon the trial of this cause the damages sustained by the lands" be fixed at not to exceed an amount named

and that the plaintiff have further "just and proper relief."

To each of these ten complaints filed as original suits in this court, the landowners, as defendants, filed motions to dismiss, asserting lack of statutory authority for the appeal to this court, the condemnor's previous election to proceed in the state court by instituting the proceedings before the sheriff as alleged in the complaint, with the consequent finality of the award of the condemnation jury, the deposit of the amount of the award with the sheriff to obtain possession of the property, the election to appeal from the condemnation award to the state court, the filing of the petition for removal from the state court to this court (as disclosed by the removal proceedings in the ten cases recited above), the consequent election to proceed as prescribed by the law of Iowa and that this court is without jurisdiction of the alleged claim. These respective motions to remand and to dismiss were orally argued and written briefs have been filed.

The court will first consider the landowners' motions to dismiss the complaints in the ten cases originally docketed in this court as direct appeals from the commissioners' awards.

The condemnor contends that before August 1, 1951 (the effective date of Rule 71A of the Federal Rules of Civil Procedure, 28 U.S.C.A.) the condemnor had the right of appeal from the award by the sheriff's commission directly to this court; that since August 1, 1951, Rule 71A(k) provides the specific procedure for the exercise of the right of such appeal. Subsection (k) is as follows:

"Condemnation Under a State's Power of Eminent Domain. The practice as herein prescribed governs in actions involving the exercise of the power of eminent domain under the law of a state, provided that if the state law makes provision for trial of any issue by jury, or for trial of the issue of compensation by jury or commission or both, that provision shall be followed."

In support of the claimed right of direct appeal to this court, condemnor's counsel

cite Madisonville Traction Co. v. St. Bernard Mining Co., 196 U.S. 239, 25 S.Ct. 251, 49 L.Ed. 462. That action was an original suit in equity by the mining company to enjoin the state court from proceeding to have lands condemned in a case instituted in the county court of Kentucky despite the fact of removal of the proceedings to the Federal Circuit Court. The Traction Company, authorized by law and its charter to construct an electric railroad, had filed its application in the County Court for appointment of commissioners to assess damages for the taking of private property. The Kentucky statutes prescribing this procedure provided for appeal by either party to the Circuit Court and trial de novo there by jury of the amount of compensation. Commissioners were appointed who made an award of $100 to the Mining Company. Before any action on the award, the landowner petitioned for removal to the Circuit Court of the United States, alleging requisite diversity of citizenship and amount. The County Court refused to recognize any right of removal and was about to proceed when the landowner sued in equity in the Circuit Court of the United States for injunction. The Traction Company demurred to the bill, urging lack of jurisdiction and authority in the Circuit Court. The demurrer was overruled. The Traction Company elected to stand on the ruling. Injunction was issued enjoining the Traction Company from proceeding further in the County Court. The opinion is not authority for the condemnor's claim here. It recognizes that the proceeding commenced in the County Court, and removed to the federal court, was already a "suit" or "controversy" between citizens of different States" within the meaning of the Constitution and laws of the United States. That is because the condemnation proceeding under Kentucky law was required to be commenced as a suit in the County Court. That court was asked to appoint commissioners to assess the damages to which the landowner was entitled. Such was the statutory method provided for condemnation. The opinion recognized that "After the removal of a case of condemnation from a state court, the Federal court would proceed under the sanction of state legislation." Referring to judicial power to be exercised by the courts of the United States, the opinion said, 196 U.S. at page 255, 25 S.Ct. at page 257:

"In the exercise of that power a circuit court of the United States, sitting within the limits of a state, and having jurisdiction of the parties, is, for every practical purpose, a court of that state. Its function, under such circumstances, is to enforce the rights of parties according to the law of the state, taking care, always, as the state courts must take care, not to infringe any right secured by the Constitution and the laws of the United States."

It is true that the opinion overrode the contention that the case was not removable until it had been taken by appeal from the County Court to the State Circuit Court where it would be "tried" de novo. This is understandable because of the previous expression in the opinion, 196 U.S. at page 251, 25 S.Ct. at page 255, "that the case presented in the county court was a 'suit' or 'controversy between citizens of different States,' within the meaning of the Constitution and the laws of the United States. It was, as already said, a judicial proceeding initiated in a tribunal which constitutes a part of the judicial establishment of Kentucky, as ordained by its Constitution (Ky. Const. § 140); and the court, although charged with some duties of an administrative character, is a judicial tribunal and a court of record." Here the sheriff's commission, appointed under the Iowa statutes and from whose award the appeal is taken to this court, is but an administrative body and in no sense a judicial tribunal.

Considering statutes identical in substance, the Supreme Court of Iowa, speaking through Ladd, C. J., in Myers v. Chicago & N. W. Ry. Co., 118 Iowa 312, 315, 91 N.W. 1076, 1078, said:

"From these statutes it plainly appears that the proceeding before the commissioners appointed by the sheriff to appraise the land *is not a suit at law, but in the nature of an inquest to ascertain its value.* No hearing is had, and no evidence introduced. The commis-

sioners merely inspect the land, determine upon the amount of damages which will be occasioned by the appropriation, and make a written report to the sheriff. Thus far then the proceeding *is in no respect a suit.*" (Emphasis supplied.)

The opinion further says, 118 Iowa at page 316, 91 N.W. at page 1078:

"Unless in court, or before those exercising . judicial functions, the proceeding cannot be regarded as a suit (citing cases). That the proceeding to condemn land is not a suit, within the language of the removal acts of congress [28 U.S.C.A. § 1441 et seq.], and is such after the appeal to the district court, seems to be conclusively settled against the appellees, in Boom Co. v. Patterson [8 Otto 403] 98 U.S. 403, 25 L.Ed. [206] 207, and Union Pacific Railroad Co. v. Myers, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319. See, also, Searl v. School Dist., 124 U.S. 197, 8 S.Ct. 460, 31 L.Ed. 415. In the first-cited case the court said, speaking through Field, J.: 'The proceeding in the present case before the commissioners appointed to appraise the land was in the nature of an inquest to ascertain its value, and not a suit at law, in the ordinary sense of those terms. But when it was transferred to the district court by appeal from the award of the commissioners, it took, under the statute of the state, the form of a suit at law, and was thenceforth subject to its ordinary rules and incidents. The point in issue was compensation to be made to the owner of the land,—in other words, the value of the property taken. No other question was open to contestation in the district court. Turner v. Holleran, 11 Minn. 253 ([11] Gil. 168). The case would have been in no essential particular different had the state authorized the company, by statute, to appropriate the particular land in question, and the owners to bring suit against the company in the courts of law for its value. That a suit of that kind could be transferred from the state to the federal court, if the controversy were between the company and a citizen from another state, cannot be doubted.' "

Counsel for the condemnor argues that to avail itself of the exercise of the right of eminent domain granted to it by the State of Iowa, it pursued the administrative procedure provided by the laws of that State before it might come to this court, but that having progressed through the administrative procedure to the point of determination by the commissioners of the amount of the award for the taking of the land, it then had a controversy which, because of its diverse citizenship and the amount involved, permitted it to come by appeal directly to this court. It is believed that the authority upon which counsel relies for this statement is based upon situations where the condemnation proceedings were instituted in the county court or other tribunal which was a part of the judicial establishment of the state. The commission of freeholders appointed by the sheriff is not a tribunal which is a part of the judicial establishment of the State of Iowa. It is a purely administrative body which, as said by Judge Ladd, conducts a proceeding in the nature of an "inquest" to determine the value of the land.

That such a condemnation body is not a court is also decided by the Court of Appeals of this Circuit. In 1909, the 33rd General Assembly of Iowa authorized the purchase of waterworks by cities under certain conditions. I.C.A. §§ 397.8, 397.20 et seq. The valuation was to be determined by what was described as a "court of condemnation" to consist of three state district court judges appointed by the Supreme Court of Iowa. Such a "court" was appointed in connection with the proposed purchase of the local waterworks by the City of Des Moines, Iowa. Thereupon the water company, as plaintiff, filed its petition and bond for removal to the federal court, filing both in the Supreme Court and in the "court of condemnation." It then brought a separate action in the federal court to enjoin further proceedings, alleging that the Act and the appointment of the district court judges violated the Iowa Constitution, Article 5, Section 5,

I.C.A., which provides that a district judge shall not be eligible "to any other office, except that of Judge of the Supreme Court, during the term for which he was elected." The complainant contended that the appointment of the district judges to sit in a "court of condemnation" was appointment of these judges to another office. A three-judge federal court denied the injunction. Des Moines Water Co. v. City of Des Moines, D.C., 194 F. 557. On appeal, the Circuit Court affirmed. 8 Cir., 206 F. 657. In commenting, the opinion said, at page 662 of 206 F.:

"There is nothing in this point. Although this body is called a court, the members thereof can be no more considered a judicial tribunal than can the six freeholders selected by the sheriff to perform similar duties."

As to the effect of removal to this court by notice to the court of condemnation, it was said:

"At the time the petition for removal was filed the proceeding was not then a 'suit,' within the meaning of the removal acts * * *. Kaw Valley Drainage Co. v. Metropolitan Water Co., [8 Cir.] 186 F. 315."

This is the only case found under Iowa procedure which appears to parallel the attempt of the condemnor to come to this court by direct appeal from the condemnation commission. The court can find no statutory or other satisfactory source of authority for such appeal. There is respectable authority for the proposition " 'that when a statute gives a new and extraordinary remedy, and directs how the right to the remedy is to be acquired or enjoyed, how it is to be enforced, the act should be strictly construed; and the steps pointed out for the enjoyment of the remedy provided should be construed as mandatory, rather than directory or optional.' " Union Terminal Ry. Co. v. Chicago, B. & Q. R. Co., C.C., 119 F. 209, quoting at page 216 from Campbellsville Lumber Co. v. Hubbert, 6 Cir., 112 F. 718–725. (The Union Terminal case, decided in 1902 by the Circuit Court of the Western District of Missouri was before a circuit and district judge. It involved a motion to remand proceedings for condemnation which had been commenced in the State Circuit Court and removed to the federal court.) Certainly the remedy here given—i. e., the means to exercise the right of eminent domain by a private corporation with the consent of the State of Iowa—is a "new and extraordinary remedy." The law giving the remedy directs how it shall be enjoyed. That law is to be strictly construed. The State is granting a modicum of its sovereignty. This court surely may not add to or subtract from the State's grant of such an extraordinary privilege.

It is contended that the new Rule 71A(k) now provides authority for such a direct appeal to this court. But we have seen that the proceedings do not take the form of a suit or, as now provided, a "civil action," until appeal from the commissioners' award has been taken and filed in accordance with the Iowa statute. For Rule 71A(k) to be construed as providing the authority to remove by this notice of appeal to this court, it would be necessary to find that the rule-making power had in effect amended Sec. 1441(a) of Title 28, U.S.C. After the promulgation of the rule by the Supreme Court and the expiration of the sixty-day period before its effective date, surely it may not be argued that the effect was so to amend Sec. 1441 as to include or describe as a "civil action brought in a State court" the kind of proceeding here involved. This court will construe it so only when Congress has acted by direct expression, not by implied acquiescence. This court has limited jurisdiction expressly defined by the Congress. This Congressional grant is to be strictly construed. It is said in Shamrock Oil & Gas Corp v. Sheets, 313 U.S. 100, 109, 61 S.Ct. 868, 872, 85 L.Ed. 1214;

" 'Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined'. Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248; see Kline v. Burke Construction Co., 260 U.S. 226,

902

233, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226, 24 A.L.R. 1077; Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447; cf. Elgin v. Marshall, 106 U.S. 578, 1 S.Ct. 484, 27 L.Ed. 249."

■ There is another and, I believe, taken alone, a compelling reason why such an appeal is not and cannot be effective or permitted. The power of eminent domain appertains to and is an attribute of the right of sovereignty. It is to be exercised with due respect for constitutional rights and guaranties.

Iowa has delegated that power to those legislatively named when the authority is used for a declared purpose found to be in the public interest. It has so circumscribed the method of its use as to insure its citizens due process of law and just compensation for the taking of their property.

The condemnor here availed itself of such delegated authority when it filed its application with the sheriff. The method of its exercise includes a right of appeal to the District Court of the proper county by any party aggrieved by the commissioners' award. It would be an unwarranted encroachment on the State's authority for this court to find and declare that the prescribed proceedings, despite their expressed and explicit detail, contemplate and permit an appeal from the commissioners' award directly to this court instead of to the court named by the General Assembly of Iowa.

When it filed its application for condemnation, this condemnor undertook to avail itself of the privilege of eminent domain delegated to it by the State of Iowa. If condemnor is to enjoy and exercise that privilege it must pursue the method which the State has prescribed for its use. After the prescribed administrative procedure is concluded, and when the matter has ceased to be an inquest to ascertain value and has taken the form of a civil action to be heard and determined in a court of justice, the situation and relationship of the parties then may permit a choice of the forum in which the judicial controversy may be determined. Then, and not until then, will the ordinary rules and incidents of a civil action apply.

Boom Co. v. Patterson, 8 Otto 403, 98 U.S. 403, 25 L.Ed. 206.

■ ■ The Iowa statute, Sec. 472.20, provides for filing the appeal with the clerk of the State District Court, and if condemnor is to avail itself of the right of appeal and have the amount determined "as in an action by ordinary proceedings", § 472.21, it must follow the mode prescribed. There is nothing in the Iowa or the federal statutes, or in the adjudicated cases that we have found, or in Rule 71A, which permits a condemnor to bring the commissioners' award directly to this court for review by service of notice of appeal upon the sheriff and the landowner, as here attempted.

Therefore, the motions to dismiss the complaints in the ten actions separately docketed in this court will be sustained.

II.

■ The landowners seek to have remanded the ten cases brought here upon petition for removal from the State Court. They claim that this court is without jurisdiction and the cases may not be removed here because the condemnor is not the defendant within the meaning of Sec. 1441(a) of Tit. 28, U.S.C.

The landowners depend primarily on Mason City & F. D. R. R. Co. v. Boynton, 204 U.S. 570, 27 S.Ct. 321, 322, 51 L.Ed. 629. In that case, where four questions were submitted by the Court of Appeals of this Circuit, among which was the first proposition discussed in this memorandum, the court determined only one, which was stated thus: " 'Was the landowner a defendant within the meaning of the removal statute, when the suit was removed into the circuit court?' " The opinion holds that the landowner was such a defendant and sustained the removal. In doing so the writer of the opinion said, after discussing a state decision urged to the contrary:

"But this court must construe the act of Congress regarding removal. And it is obvious that the word 'defendant' as there used is directed toward more important matters than the

burden of proof or the right to open and close. It is quite conceivable that a state enactment might reverse the names which, for the purposes of removal, this court might think the proper ones to be applied. In condemnation proceedings the words 'plaintiff' and 'defendant' can be used only in an uncommon and liberal sense. The plaintiff complains of nothing. The defendant denies no past or threatened wrong. Both parties are actors: *one to acquire title, the other to get as large pay as he can.* It is not necessary, in order to decide that the present removal was right, to say that the state decision was wrong. We leave the latter question where we find it. But we are of opinion that the removal in this case was right * * *." (Emphasis supplied.)

It is true that the opinion held that in a broad sense the railroad is the plaintiff, because the institution and continuance of the proceeding depend upon its will. The opinion is authority for the statement that the designation given the parties by the state statute is not conclusive, nor is the alignment of the parties as made by the parties themselves binding on this court, and this court must construe the act regarding removal. The authority of the Boynton case is fully recognized and accepted. Twice before the question of removal by the condemnor, of proceedings commenced in the District Court of the State of Iowa has been considered and approved by this court. Kirby v. Chicago & N. W. R. Co., C.C., 106 F. 551; Hagerla v. Mississippi River Power Co., D.C., 202 F. 771. In each case this court overruled the motion to remand. In each case the landowner appealed to the State District Court from the commissioners' award and the condemnor instituted removal proceedings and came to this court. The Kirby case antedated the Boynton case. In his opinion my predecessor said, 106 F. at page 554:

"I add the statement—to me of little importance, and certainly not controlling—that the Iowa statute, in providing for the appeal, recites, 'The land-

owner shall be plaintiff and the corporation defendant.' I cite this to show that the company is at least called a defendant. But I think it is an actual defendant, in view of the situation of the parties before the state district court."

In answer to the contention of counsel for the landowners that "this was a kind of special proceeding, and one that could not have been brought in this court originally, and therefore cannot be removed here", the same judge said, 106 F. at page 557:

"The Iowa statutes provide that a railway may appropriate a right of way. It must first pay or secure the damages. It has paid, or should if it has not, the amount fixed by the commissioners. That done, it has the right to enter upon and occupy the strip of land. Until that sum is increased by another tribunal having jurisdiction, such occupancy is good. When increased, such additional money must be paid. If it is decreased, such decrease is withdrawn. Therefore the only controversy is as to damages, and, there being a controversy on that question, and such controversy being between citizens of Iowa and Pennsylvania on one side, as plaintiffs, and the company, which is a defendant, and citizen of Illinois, on the other side, and the amount in controversy exceeding the requisite sum, the case was removed from the state court to this court; and the removal was effected and was complete when the petition and bond was filed. Nothing further was to be done, excepting to timely file in this court, and that was done."

It is to be observed that in the Boynton case the court said at page 580 of 204 U.S., at page 324 of 27 S.Ct.:

"Looked at as a whole, the Iowa statutes provide a process by which railroads and others may acquire land for their purposes which the owner refuses to sell. The first step is the valuation. Whether it is part of the case or not, it is a necessary condition to the proceedings in court. Against the

will of the owner the title to the land is not acquired until the case is decided and the price paid. The *intent of the railroad to get the land is the mainspring* of the proceedings from beginning to end, and the persistence of that intent is the condition of their effect. The state is too considerate of the rights of its citizens to take from them their land in exchange for a mere right of action. *The land is not lost until the owner is paid. Therefore, in a broad sense, the railroad is the plaintiff, as the institution and continuance of the proceedings depend upon its will.* Hudson River Railroad & Terminal Co. v. Day, [C.C.,] 54 F. 545." (Emphasis supplied.)

The emphasis in the foregoing quotes is significant. In the cases at bar the "taking" is accomplished. The condemnor has paid the award to the sheriff and is occupying the land. Therefore, the land is "lost" to the owner and the situation of the parties is completely changed from that which existed in the Boynton case. "The intent of the railroad to get the land" is no longer "the mainspring" of the proceedings. The condemnor (the railroad) has the land, and although it is the condemnor who has appealed from the award, the purpose of the landowner yet is "to get as large pay as he can." Nothing else will be before the court. As was said in the Kirby case, "The only controversy is as to damages," and it is between citizens of different states. Looking at the position of the parties in the title and into the nature of the litigation and the relations of the parties to the issue in controversy, we find that the one nominally the plaintiff is in fact the plaintiff, and the one nominally the defendant is in fact the defendant. The plaintiff under the Iowa statutes, Secs. 472.21, 472.22, files his written petition "stating specifically the items of damage and the amount thereof", and the defendant condemnor files a written answer thereto. It is true that the amount of the commissioners' award may be reduced to plaintiff's detriment. But it is also true that the proceedings are open for an award against the condemnor for an amount in excess of that of the commissioners. The landowner is entitled to as large pay as he can get from the condemnor. For every practical purpose at time of removal in these cases at bar the condemnor is both nominal and actual defendant.

### III.

■ The right to remove proceedings to this court applies to actions which could have been brought in this court in the first instance. Sec. 1441, Tit. 28, United States Code.

■ An action to condemn land is a civil action within the meaning of this section and may be brought in the federal court of the district in which the land lies. Franzen v. Chicago M. & St. P. Ry. Co., 7 Cir., 278 F. 370; Boom Co. v. Patterson, 8 Otto 403, 98 U.S. 403, 25 L.Ed. 206.

We have the direct question, therefore, whether, requisite diversity and amount existing, Rule 71A now provides to this condemnor the means initially to proceed in this court. If it does, then has condemnor the option either to proceed as was done in these cases by filing its application with the sheriff of Pottawattamie County and pursuing the Iowa statutory remedies, and then coming to this court by removal proceedings after appeal to the State District Court from the award of the sheriff's commission; or, to proceed initially in this court by complaint filed here asking the appointment of commissioners to determine the amount of compensation, with consequent right to either party to have the award redetermined by trial de novo of the issue before a petit jury?

It is recognized that Rule 71A is a rule of procedure and does not change substantive law. Tit. 28, Sec. 2072. It is declared in the order adopted April 30, 1951, by the Supreme Court, paragraph 2, that the new rule is "to govern condemnation cases in the United States District Court." In subparagraph (a) it is stated that except as otherwise provided in this new rule, the Rules of Civil Procedure "govern the procedure for the condemnation of real and personal property under the power of eminent domain." If the action involves

the exercise of the power of eminent domain under the law of the United States, then the trial is governed by subparagraph (h) of the new rule. If it involves the exercise of the power of eminent domain under the law of the state, then subparagraph (k) controls.

The effect of the rule therefore, as I interpret it, is to provide for a condemnor undertaking to exercise the power of eminent domain under the law of a state, the means to proceed in this court in the first instance if jurisdiction resides here under Sec. 1332, Tit. 28, U.S.C. To hold otherwise would have the effect of depriving a citizen of another state of rights conferred upon him by Sec. 1332 to commence an action here. It would be equivalent to amending Sec. 1332 by inserting what we have italicized so that it would read thus: "The district courts shall have original jurisdiction of all civil suits *except those involving the exercise of the power of eminent domain* where the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and is between: (1) Citizens of different states."

If it should be contended that the Iowa State Commerce Commission might condition its right to the issuance of the permit provided by Sec. 471.10 of the Code of Iowa, 1950, I.C.A., to require that a condemnor should initiate his proceedings by filing the application with the sheriff of the county in which the land is located, as provided by Sec. 472.3 of the Iowa statutes, the answer is, that if the condemnor has the right to proceed in the first instance in the federal court, that right may not be taken away by a condition sought to be imposed by the Commerce Commission, or by the Legislature. That is clearly stated in Madisonville Traction Co. v. St. Bernard Mining Co., supra, 196 U.S. at page 252, 25 S.Ct. at page 256:

"Speaking generally, it is for the state, primarily and exclusively, to declare for what local public purposes private property within its limits may be taken upon compensation to the owner, as well as to prescribe a mode

in which it may be condemned and taken. But the state may not prescribe any mode of taking private property for a public purpose, and of ascertaining the compensation to be made therefor, which would exclude from the jurisdiction of a circuit court of the United States a condemnation proceeding which, in its essential features is a suit involving a controversy between citizens of different states."

One having the right to come here initially in condemnation proceedings surely cannot go partly down the road of the state procedure and then cut across from the sheriff's commissioners' award to this court. There is no such path defined. It was said earlier in Division I that there is no authority for such action. It is perhaps better said that Rule 71A is authority *against* such action. Whether Rule 71A provides an *exclusive* remedy in a diversity case, and one failing to proceed initially in this court loses the right of removal by the election to pursue the state statutory procedure, may be arguable, but until it has been expressly declared to be an exclusive remedy this court is unwilling to deprive a nonresident of his right to come here under the authority granted by Sec. 1441(a) of Tit. 28, U.S.C.

To paraphrase Madisonville Traction Co. v. St. Bernard Mining Co., supra, 196 U.S. at page 253, 25 S.Ct. at page 257: "Under any other view a state, by its own tribunals, could deprive citizens of other states of their property by condemnation, without giving them an opportunity to protect themselves, in a national court, against local prejudice and influence."

## IV.

In all candor, it should be said that the question of the right of removal of these cases has not lent itself to quick determination. A predecessor on this court may not have been inaccurate when he said "That there is no other phase of American jurisprudence with so many refinements and subtleties, as relate to removal proceedings, is known by all who have to deal with them." Hagerla v. Mississippi River Power Co., D.C., 202 F. 771, 773. The

906

complications presented by the privileges extended to a condemnor by Rule 71A(k), and by the first impression created by reading of the opinion in the Boynton case, supra, combined to cause some rather extended research. The court has been mindful of the purpose of the Congress in providing for the right of removal. As expressed in the Traction Company case, supra, a purpose and effect is to protect the nonresident "against local prejudice or influence."

This court has found itself strongly persuaded by what was so well phrased by the late Walter H. Sanborn, Judge of this Circuit, when speaking of the right of removal, he said in Boatmen's Bank v. Fritzlen, 8 Cir., 135 F. 650, 655:

> "That right is of sufficient value and gravity to be guarantied by the Constitution and the acts of Congress. If it exists, and the Circuit Court denies its existence, and remands or refuses to remove the suit, the error is remediless, and it deprives the petitioner of his constitutional right. If the right does not exist, and the court affirms its existence and retains the suit, the error may be corrected by the Supreme Court. An error that the aggrieved party may correct is less grievous than one that is without remedy. And the true rule is that motions to remand and for removal should be decided, not by the existence of doubts, but by the preponderance of the facts, the law, and the reasons which condition them, in view of the fact that the right to invoke the jurisdiction of the federal court is a valuable constitutional right, and an erroneous affirmance of the claim to that right may be corrected by the Supreme Court upon a certificate of the question of jurisdiction, while an erroneous denial of the claim is remediless."

Orders for judgment of dismissal will be prepared and filed in Nos. 1–80 to 1–83, inclusive, and Nos. 1–85 to 1–90, inclusive. Orders overruling the motions to remand will be prepared and filed in Nos. 1–91 to 1–101, inclusive. Exceptions to adverse rulings will be allowed to all parties.