CHICAGO, R. I. & P. R. CO. v. STUDE et al.

STUDE v. CHICAGO, R. I. & P. R. CO.

STUDE et al. v. CHICAGO, R. I. & P. R. CO.

Nos. 14724–14726.

United States Court of Appeals
Eighth Circuit.

April 30, 1953.

Rehearing Denied June 17, 1953.

See 204 F.2d 954.

A. B. Howland, Des Moines, Iowa (R. L. Read and B. A. Webster, Jr., Des Moines, Iowa, were with him on the brief), for Chicago, R. I. & P. R. Co.

Raymond A. Smith, Council Bluffs, Iowa, and Harold W. Kauffman, Omaha, Neb. (Philip J. Willson, John M. Peters, Council Bluffs, Iowa, G. C. Wyland, Avoka, Iowa, Daniel J. Gross, Omaha, Neb., and Dorothy O'D Martin, Atlantic, Iowa, were with them on the brief), for Archie C. Stude et al.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This action involves the right of the Rock Island Railroad Company to have the issue of damages for the taking of private property by eminent domain under state law determined in the federal courts.

The actions, ten in number,[1] were initiated by the Rock Island by filing with the sheriff of Pottawattamie County, Iowa, a written application conforming to the Iowa Code of practice in eminent domain proceedings by railroad companies. Authority had theretofore been obtained from the Interstate Commerce Commission and the state authorities of Iowa to relocate a short section of the Rock Island's line in the interest of better alignment and reduction of mileage. The Iowa Code fixes the following procedure. An application is filed with the sheriff of the county, requesting that he appoint a commission to assess the damages. The commissioners make their report fixing the damages and the condemning party takes possession of the property upon paying the amount of the commissioners' award to the sheriff for the use of the property owner. In this case the amount of the commissioners' awards was paid, the Rock Island took possession, and the sheriff holds

---

1. Ten tracts were involved. Separate proceedings were filed as to each. By stipulation all parties agreed that an appeal would be taken in the proceeding relating to one only and the remainder should abide the result in this one.

the funds subject to orders. The assessment made by the commissioners becomes final if not appealed from within a period fixed by the statute. Either party may appeal. An appeal is taken by giving notice to the sheriff and the interested parties, the appeal is lodged in the district court of the state for the appropriate county in which the land is situated, and docketed in that court. The Iowa Code, I.C.A., provides that appeals shall be docketed in the name of the owner of the land, or the name of such other appealing party interested in the land, as plaintiff, and in the name of the applicant for condemnation as defendant, and thereafter tried "as in an action by ordinary proceedings." I.C.A. § 472.21. After the appeal is docketed the Code provides that:

> "472.22. Pleadings on appeal. A written petition shall be filed by the plaintiff on or before the first day of the term to which the appeal is taken, stating specifically the items of damage and the amount thereof. The defendant shall file a written answer to plaintiff's petition, or such other pleadings as may be proper."

The issue of damages is then tried de novo by jury on demand of either party.

 The foregoing statutory procedure was strictly followed by the Rock Island up to the point of lodging the appeals with the state district court. The Rock Island paid the amount of the commissioners' award to the sheriff, took possession of the condemned property and began the construction of the railroad on it. But instead of filing appeals only with the state district court it lodged one appeal from each award of the sheriff's commission with that court and another, duplicate in effect, with the United States District Court. The appeals docketed in the state district court were docketed in the names of the landowners as plaintiffs and the Rock Island as defendant as the statute provided. After the appeals were docketed in the state district court, the property owners filed their "petitions" as plaintiffs, as provided for under the state

Code, setting up their claims for damages for the taking of their property. Those claims were substantially in excess of the amount awarded by the commissioners. Those appeals were removed to the United States District Court by the Rock Island. Thus the Rock Island sought to insure the trial of the issue of damages in the United States courts by taking alternate procedural methods of obtaining that result, an expedient not heretofore unknown to federal jurisprudence in other types of actions. The requisite diversity of citizenship and amount involved existed in each case. Motions to remand were filed by the property owners in each of the cases removed from the state district court, on the ground that the Rock Island, being the plaintiff, could not remove. Motions to dismiss the appeals which had been taken by the Rock Island direct from the sheriff's commissioners' awards to the United States District Court were filed by the property owners on the ground that such appeals were unauthorized by either the state Code or by the Federal Rules of Civil Procedure, 28 U.S.C.A., applicable to proceedings in eminent domain. The trial court sustained the motions to dismiss the appeals to the United States District Court taken direct from the award of the commissioners on the ground that at that stage of the condemnation proceedings, under the state Code those proceedings were not "civil actions brought in a state court" within the meaning of the removal statutes, but were in the nature of inquests to ascertain the value of the land, not then pending in any court. The trial court denied the motions to remand on the ground that the Rock Island was, at the time of removal, the defendant within the meaning of the removal statutes. Chicago, Rock Island & P. R. Co. v. Kay, D.C., 107 F.Supp. 895. The Rock Island appealed from the judgment of dismissal. The property owners cross-appealed from the order denying the motion to remand. The appeals were submitted as one case. Under these circumstances the propriety of the order denying the motion to remand will be reviewed,[2] al-

2. Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189; Schell v. Food Machinery Corp., 5 Cir., 87 F.2d 385; Johnson v. Butler Bros., 8

though such an order, standing alone, is not an appealable order.[3]

The Rock Island contends that it had the right of appeal direct from the commissioners' award filed with the sheriff to the United States District Court before rule 71A of the Federal Rules of Civil Procedure became effective and that since the effective date of rule 71A, and particularly rule 71A (k), the specific procedure for the exercise of that right of appeal is fixed by that rule.[4]

■ There can be no doubt that when the requisite diversity of citizenship and the amount involved exist, proceedings for the acquisition of private property by eminent domain under state law may be removed from a state court to a federal court. But that right of removal [5] exists only when the proceedings have ripened into a civil action in a state court. In Boom Co. v. Patterson, 8 Otto 403, 98 U.S. 403, 406, 25 L.Ed. 206, the Supreme Court said:

"The proceeding in the present case before the commissioners appointed to appraise the land was in the nature of an inquest to ascertain its value, and not a suit at law in the ordinary sense of those terms. But when it was transferred to the District Court by appeal from the award of the commissioners, it took, under the statute of the State, the form of a suit at law, and was thenceforth subject to its ordinary rules and incidents. The point in issue was the compensation to be made to the owner of the land; in other words, the value of the property taken. No other question was open to contestation in the District Court. Turner v. Holleran, 11 Minn. 253. The case would have been in no essential particular different had the State authorized the company by statute to appropriate the particular property in question, and the owners to bring suit against the company in the courts of law for its value. That a suit of that kind could be transferred from the State to the Federal court, if the controversy were between the company and a citizen of another State, cannot be doubted. And we perceive no reason against the transfer of the pending case that might not be offered against the transfer of the case supposed."

That the condemnation proceedings under the Iowa Code, I.C.A., did not become suits or civil actions in the state courts of Iowa until the appeals were lodged and docketed in the state district court is clear from the following expression of the Iowa Supreme Court in Myers v. Chicago & N. W. Ry. Co., 118 Iowa 312, 315–316, 91 N.W. 1076, 1078:

"From these statutes it plainly appears that the proceeding before the commissioners appointed by the sheriff to appraise the land is not a suit at law, but in the nature of an inquest to ascertain its value. No hearing is had, and no evidence introduced. The commissioners merely inspect the land, determine upon the amount of damages

Cir., 162 F.2d 87, 172 A.L.R. 1157; Cray, McFawn & Co. v. Hegarty, Conroy & Co., 2 Cir., 85 F.2d 516; Mayflower Industries v. Thor Corp., 3 Cir., 184 F.2d 537. Dillinger v. Chicago, B. & Q. R. Co., 8 Cir., 19 F.2d 196, decided by this court to the contrary, was in effect overruled in Johnson v. Butler Bros., 8 Cir., 162 F.2d 87, 172 A.L.R. 1157, and note should be taken that the former should no longer be followed. McCabe v. Guaranty Trust Co., 243 F. 845, also to the contrary, decided by the Court of Appeals for the Second Circuit, was later overruled by that court in Cray, McFawn & Co. v. Hegarty, Conroy & Co., 85 F.2d 516.

3. Reed v. Lehman, 2 Cir., 91 F.2d 919; Miller v. Pyrites Co., 4 Cir., 71 F.2d 804.

4. "(k) Condemnation Under a State's Power of Eminent Domain. The practice as herein prescribed governs in actions involving the exercise of the power of eminent domain under the law of a state, provided that if the state law makes provision for trial of any issue by jury, or for trial of the issue of compensation by jury or commission or both, that provision shall be followed." Fed.Rules Civ.Proc. rule 71A, 28 U.S.C.A.

5. 28 U.S.C.A. § 1441 (a) "* * * any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States * * *."

which will be occasioned by the appropriation, and make a written report to the sheriff. Thus far then the proceeding is in no respect a suit. * *

"Unless in court, or before those exercising judicial functions, the proceeding cannot be regarded as a suit. (Citing cases.) That the proceeding to condemn land is not a suit, within the language of the removal acts of congress, and is such after the appeal to the district court, seems to be conclusively settled against the appellees in Boom Co. v. Patterson [8 Otto 403], 98 U.S. 403, 25 L.Ed. 207, and [Union Pacific] Railroad Co. v. Myers, 115 U. S. 1, 5 S.Ct. 1113, 29 L.Ed. 319. See, also, Searl v. School Dist., 124 U.S. 197, 8 S.Ct. 460, 31 L.Ed. 415."

■ But the question of whether the proceedings were removable at the time of the attempted appeal to the federal court from the commissioners' award is beside the point in determining the existence of a *right of appeal* of those proceedings to the federal court. The short and simple answer to the Rock Island's contention that it had the right of direct appeal from the commissioners' award to the federal court is that there was no right of appeal from the commissioners' award to the federal court provided for in the state Code and Rule 71A confers none. No such right exists.

■ It is apparent from what has already been said that the proceedings were removable from the state district court to the United States District Court at the time the petitions for removal were filed. But the question is whether the Rock Island could remove them. Under the present removal statute, 28 U.S.C.A. § 1441(a) heretofore quoted in a footnote, only a defendant has that right. Shamrock Oil &

Gas Corp. v. Sheets, 313 U.S. 100, 61 S. Ct. 868, 85 L.Ed. 1214.

In Mason City & Fort Dodge R. Co. v. Boynton, 204 U.S. 570, 27 S.Ct. 321, 51 L.Ed. 629, the Supreme Court held that a railroad company condemning land under the Iowa Code was the plaintiff and the landowner the "defendant" for the purpose of removal. In that case the Supreme Court noted, but disregarded, the Iowa Supreme Court's construction of the laws of Iowa governing condemnation. The Iowa court had construed its statutory law in such proceedings as placing the railroad condemnor in the position of an actual as well as nominal defendant after the proceedings had progressed to the point of the ascertainment of the amount of damages. Myers v. Chicago & N. W. Ry. Co., 118 Iowa 312, 91 N.W. 1076. That is the stage at which the present proceedings stand.[6] The Supreme Court, in laying aside the argument that the state decision, holding that the railroad was the actual defendant and had the right to remove, was controlling, said [204 U.S. 570, 27 S.Ct. 323]:

"But this court must construe the act of Congress regarding removal. And it is obvious that the word 'defendant' as there used is directed toward more important matters than the burden of proof or the right to open and close."

The court then considered the Iowa statute as a whole and reached the conclusion that, properly construed and evaluated, the condemnor under that statute is the plaintiff for purposes of removal, despite the holding of the state court to the contrary.

■ For present purposes we may not pay heed to the opinion, frequently expressed with considerable logic by courts and writers other than the Iowa Supreme Court, that in eminent domain proceedings

---

6. The trial court was of the opinion that the present case was distinguishable from Mason City & Ft. Dodge R. Co. v. Boynton because here the Rock Island had irrevocably taken the property condemned whereas in Mason City & Ft. Dodge R. Co. v. Boynton some emphasis was given to the fact that the railroad had not done so but was free to elect to abandon the condemnation proceedings if the final assessment of damages was greater than it chose to pay. While there is that clear factual difference between this case and Mason City & Ft. Dodge R. Co. v. Boynton, we are not convinced that the result reached in that case would have been different if, as here, there had been an irrevocable taking.

which have reached this stage the landowner becomes the plaintiff for all practical purposes. For we are of course to follow the Supreme Court in Mason City & Ft. Dodge R. Co. v. Boynton, if subsequent decisions of the Supreme Court have not directed a different course. We come to the effect of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, upon the present situation.

Mason City & Ft. Dodge R. Co. v. Boynton, was decided long before Erie R. Co. v. Tompkins. The latter decision was, at the time of its announcement, and thereafter, recognized by the bench and the bar as changing the previous concept of the controlling deference to be given rules of decision of state courts on questions of substantive law in diversity cases. No longer is there doubt as to the duty of federal courts to follow the law of the state on such questions. In Mason City & Ft. Dodge R. Co. v. Boynton the importance of the present question is recognized by the language of the above-quoted excerpt from the opinion. The determination of the question now before us determines, among other rights, the right of a party to the benefits of the Removal Act, a right universally recognized as both valuable and important. We would be constrained to apply the rule of Erie R. Co. v. Tompkins and treat the right of a party to be characterized as a defendant for the purpose of having the benefit of the right of removal as a substantive matter to be determined by the state on questions arising locally were it not for what appears to us to be the controlling effect of the Shamrock case.[7] For, indeed, it would seem that the Iowa Supreme Court would be best able to evaluate the effect of the Iowa Code in this regard, and, having done so, that the federal courts should bow to the construction placed upon a local statute by the highest court of the state. The long-established rule in that regard was reiterated only last month in Albertson v. Millard, 345 U.S. 242, 73 S.Ct. 600, 602, wherein the court said:

"Interpretation of state legislation is primarily the function of state authorities, judicial and administrative. The construction given to a state statute by the state courts is binding upon federal courts."

Also cf. Dice v. Akron, C. & Y. R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (dissenting opinion). But in the light of Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 870, 85 L.Ed. 1214, we may not do so. Erie R. Co. v. Tompkins was decided April 25, 1938, as most everyone now knows. The Shamrock-Sheets case was decided April 28, 1941. While from the printed summarization of the argument for petitioner, found preceding the opinion, it does not appear that the rule of Erie R. Co. v. Tompkins was specifically interposed in the Shamrock case, yet the rule of Erie R. Co. v. Tompkins could not well have been overlooked. We may confidently assume that if the rule of Erie R. Co. v. Tompkins should have been applied, it would have been applied in the Shamrock case. But instead of applying that rule we find that the Supreme Court, referring to Mason City & Fort Dodge v. Boynton, supra, said in the Shamrock case:

"Petitioner argues that although nominally a plaintiff in the state court it was in point of substance a defendant to the cause of action asserted in the counterclaim upon which, under Texas procedure, judgment could go against the plaintiff in the full amount demanded. (Citing cases.) *But at the outset it is to be noted that decision turns on the meaning of the removal statute and not upon the characterization of the suit or the parties to it by state statutes or decisions.* Mason City & Ft. Dodge R. Co. v. Boynton, 204 U.S. 570, 27 S.Ct. 321, 51 L.Ed. 629. The removal statute which is nationwide in its operation, was intended to be uniform in its application, unaffected by local law definition or characterization of the subject-matter to which it is to be applied. Hence the Act of Congress must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed

---

**7.** See also Chicago, M. & St. P. Ry. Co. v. Drainage Dist. No. 8, D.C., 253 F. 491.

from the state to the federal courts." (Italics supplied.)

And prior to Erie R. Co. v. Tompkins the Supreme Court announced a similar doctrine in Com'rs of Road Imp. District v. St. Louis S. W. Ry. Co., 257 U.S. 547, 557, 42 S.Ct. 250, 254, 66 L.Ed. 364:

"But it is said that the state Supreme Court [of Arkansas] has held otherwise and that such a decision is binding on us. The question of removal under the federal statute is one for the consideration of the federal court. It is not concluded by the view of a state court as to what is a suit within the statute. Upshur County v. Rich, 135 U.S. 467, 477, 10 S.Ct. 651, 34 L.Ed. 196; Mason City & Fort Dodge R. R. Co. v. Boynton, 204 U.S. 570, 27 S.Ct. 321, 51 L.Ed. 629; Madisonville Traction Co. v. St. Bernard Mining Co., 196 U.S. 239, 25 S.Ct. 251, 49 L.Ed. 462. While the decision of the state court as to the nature of a proceeding under state statutes sought to be removed is, of course, very persuasive, it is not controlling, because involved in the application of a federal statute and the exercise of a federal constitutional right. The issue as to removal is akin to the question, which sometimes arises in enforcing the inhibition against state laws impairing the obligation of a contract, whether there is a contract under state law. This court decides that for itself University v. People [of State of Ill.], 99 U.S. 309, 25 L.Ed. 387; Jefferson Branch Bank v. Skelly, 1 Black 436, 17 L.Ed. 173; Bridge Proprietors v. Hoboken Co., 1 Wall. 116, 17 L.Ed. 571; Delmas v. [Merchants] Insurance Co., 14 Wall. 661, 20 L.Ed. 757."

Hence both before and after Erie R. Co. v. Tompkins the rule followed in construing and applying the removal statute has remained the same.

■ In our judgment we are bound by the Mason City case and the Shamrock case and must hold that the Rock Island Railroad was not a defendant within the meaning of the removal statute and could not, therefore, remove the civil actions from the district court of Iowa to the federal court. The judgment of the trial court dismissing the direct appeal from the commissioners' award to the United States District Court is affirmed.

The order of the trial court denying the motion to remand the proceedings removed from the district court of Iowa to the United States District Court is reversed with directions to grant the motion and remand the cause.

The question of whether the Rock Island could have initiated the proceedings in the United States District Court is not before us for the simple reason that it did not do so and hence the propriety of such action is not presented. We express no opinion on that subject.